Nos. 95-3535/3691

In re: Fairfield Pagosa, Inc.;      *
Fairfield Communities, Inc.,       *
                               *
          Debtors.       *
                               *
------------               *
                               *
Pagosa Lakes Property Owners'   *
Association, Inc., a          *
Colorado Non-Profit          * Appeal and Cross-Appeal from the
Corporation,                 * United States District Court for
                               * the Eastern District of Arkansas
      Appellant/Cross-Appellee.   *
                               *
      v.                    *
                               *
Fairfield Pagosa, Inc.;       *
Fairfield Communities, Inc.;    *
First National Bank of Boston,  *
                               *
      Appellees/Cross-Appellants.*

Submitted: April 8, 1996

Filed: October 2, 1996

Before McMILLIAN, FAGG and BURNS,* District Judge.

McMILLIAN, Circuit Judge.

    This case is on appeal and cross-appeal from an order entered in the United States District Court[1] for the Eastern District of

---

    *The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

    [1]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

Arkansas affirming an order of the bankruptcy court[2] in adversary proceedings which arose in the Chapter 11 bankruptcy case for Fairfield Communities, Inc. (FCI), the debtor. Pagosa Lakes Property Owners' Ass'n v. Fairfield Communities, Inc. (In re Fairfield Communities, Inc.), No. LR-C-94-243 (E.D. Ark. Sept. 25, 1995) (hereinafter district court order). The bankruptcy court's order disposed of a claim brought by the Pagosa Lakes Property Owners' Association, Inc. (PLPOA),[3] on behalf of owners of property in the Pagosa Development (Pagosa) located in southwest Colorado, and a counterclaim brought by FCI. Id., Nos. 92-4078/92-4079 (Bankr. E.D. Ark. Mar. 11, 1994) (hereinafter bankruptcy court order). On appeal, PLPOA argues that the bankruptcy court erred in holding that (1) PLPOA does not have equitable ownership of certain real property within Pagosa under either a promissory estoppel theory or a trust theory and (2) the disputed land is subject to a valid mortgage lien held by the First National Bank of Boston (FNBB) notwithstanding a restrictive covenant of use and enjoyment of the land for the benefit of Pagosa property owners. On cross-appeal, FCI argues that, if PLPOA does have an ownership interest in the disputed property, then that interest is avoided under 11 U.S.C. § 544. For the reasons discussed below, we affirm.

I.

This case concerns the treatment in bankruptcy of certain real property referred to as the "recreational amenities" within Pagosa. Pagosa is a 26,000-acre planned community containing residential subdivisions surrounding a core business area. The recreational amenities include lakes, parks, golf courses, tennis courts, equestrian facilities, and open spaces called greenbelts. In 1990,

---

[2]The Honorable Robert F. Fussell, United States Bankruptcy Judge for the Eastern District of Arkansas.

[3]The Pagosa Lakes Property Owners' Association was originally named the Pagosa Property Owners' Association.

a wholly-owned subsidiary of FCI, Fairfield Pagosa, Inc. (FPI), held legal title to the recreational amenities, subject to a mortgage lien held by FNBB. FPI was the indirect successor in interest to the original developer of Pagosa, Eaton International Corporation (EIC).

On October 3, 1990, FCI filed for bankruptcy under Chapter 11. FPI was subsequently merged into FCI as part of the bankruptcy court's reorganization plan. PLPOA initiated an adversary proceeding in the bankruptcy case claiming that, although FCI, as FPI's parent, held legal title to those recreational amenities which had not been conveyed to PLPOA at the time of the bankruptcy filing,[4] PLPOA was the true equitable owner of those amenities. On that basis, PLPOA claimed that the property was excludable from FCI's bankruptcy estate.

The bankruptcy court held an eight-day trial on PLPOA's claim of equitable ownership of the recreational amenities and related issues raised by FCI, the debtor, and FNBB, the mortgage lienholder. Twenty-nine witnesses testified at the trial. Following the trial, the bankruptcy court set forth its findings of fact and conclusions of law in a 63-page memorandum opinion. The detailed findings of the bankruptcy court are briefly summarized as follows.

EIC began construction of Pagosa in 1969. Bankruptcy court order, slip op. at 6. In 1983, FCI purchased the stock of EIC. FPI, FCI's wholly-owned subsidiary, became the owner and manager of Pagosa. Id. at 6 & n.7. (Hereinafter, EIC and its successors in

---

[4]According to PLPOA, at the time FCI filed for bankruptcy, title to several of the recreational amenities (including two clubhouses, a recreational center, and four lakes) had already been conveyed to PLPOA. However, FCI still retained title to other significant recreational amenities (including a 27-hole golf course, tennis courts, an equestrian center, and approximately 1,000 acres of greenbelt). Brief for Appellant at 7.

interest vis-a-vis the Pagosa Development are sometimes categorically referred to as "the developer.")  While the development of Pagosa was in its early stages, EIC formally established PLPOA.  The terms governing the powers and duties of PLPOA and its membership were stated in documents entitled "Declarations of Restrictions" (DORs).  In 1970 and 1971, EIC recorded DORs in the office of the Clerk and Recorder of Archuleta County, Colorado.[5]  Id. at 6. Of particular importance in the present case is Paragraph 10 of the DORs, which states (emphasis added):

> 10.    OWNERSHIP, USE AND ENJOYMENT OF PARKS AND RECREATIONAL AMENITIES
>
> A.  All parks, recreational facilities and other amenities within the Subdivision are private, and neither [the developer's] recording of the plat nor any other act of [the developer] with respect to the plat, shall be construed as a dedication to the public, but rather all such parks, recreational facilities and other amenities shall be for the use and enjoyment of members or associate members of [PLPOA], to residents of rental properties, other classifications of persons as may be designated by [the developer], and to the guests of such members of [PLPOA] or other residents of Pagosa who qualify for the use and enjoyment of the facilities.
>
> B.  The ownership of all recreational facilities within the Subdivision shall be in [the developer] or its designee, however, [the developer] may convey or otherwise transfer any or all of the facilities to [PLPOA] and such conveyance shall be accepted by it, provided it is free and clear of all financial encumbrances.

Id. at 7.

---

[5]Between 1970 and 1979, EIC recorded and amended similar DORs for various Pagosa subdivisions, relating to particular parcels and particular uses.  Those DORs all contained the same language as in the master DOR's Paragraph 10.  Pagosa Lakes Property Owners' Ass'n v. Fairfield Communities, Inc. (In re Fairfield Communities, Inc.), No. LR-C-94-243, slip op. at 3 (E.D. Ark. Sept. 25, 1995) (hereinafter district court order).

-4-

Other documents introduced as evidence at trial included "Property Reports" (PRs),[6] which the developer was required by federal law to provide to prospective property buyers, and "Statements of Record" (SORs), which were filed by the developer with the Department of Housing and Urban Development. The language contained in these reports varied. On the one hand, some of these documents expressly provided that the developer would from time to time turn over or transfer to PLPOA unencumbered recreational amenities. Id. at 8-9, 13-14. Among those documents, some stated that the timing of such transfers would depend on the construction of the common facilities, progress of the development, and PLPOA's financial ability to maintain the recreational amenities, id. at 9, 14; and yet others expressly noted that the developer reserved the right or the option to retain the recreational amenities. Id. at 8, 13-14. On the other hand, some of the documents did not mention transfer of the recreational amenities at all. Id. at 9-11. Additionally, some of the documents specifically referred to FNBB's interest in the Pagosa property as a creditor of FCI. Id. at 10, 12, 17.

The bankruptcy court also received into evidence numerous other forms of documentary evidence, including real estate contracts, contracts of sale, statements of conditions of agreement, and purchase and sale agreements which had been executed by purchasers of Pagosa property. Id. at 42-43. Referring to this body of documentary evidence, the bankruptcy court observed "[t]here is no mention in any of [these] documents of any conveyance of the [recreational] amenities." Id. at 43.

One of the witnesses who testified at trial was David Eaton, vice president and later president of EIC. Id. at 17. Eaton had been employed by EIC from 1968 to 1983. Eaton testified that he

_____

[6]The district court refers to the Property Reports as "HUD Reports." See id. at 4.

-5-

put the DORs in writing and that, at the time, he intended to retain EIC's ownership of the recreational amenities by preserving an option either to dispose of or to keep the recreational amenities in the future. <u>Id.</u> at 17-18. He further testified that the PRs and SORs were meant to be consistent with the DORs. <u>Id.</u> at 18-19. On cross-examination, Eaton also testified that in the Stock Purchase Agreement, through which FCI purchased all of EIC's assets, EIC represented that it had good, valid, and merchantable title to all the properties conveyed to FCI, including the recreational amenities which were carried on EIC's books. <u>Id.</u> at 19. He confirmed that the stock purchase agreement did not list any right or claim of PLPOA to ownership of the recreational amenities. <u>Id.</u> Randy Warner, founder and former president and chairman of FCI, testified that he was familiar with the 1983 stock purchase as well as the documents related to the recreational amenities and that he understood that EIC had no obligation to convey the recreational amenities to PLPOA. <u>Id.</u> at 40-41.

Leonard Avery Carey, a former vice president of EIC and general manager of Pagosa during the years 1972 to 1979, testified that he authorized sales representatives under his supervision to tell prospective purchasers of Pagosa property that the amenities would be conveyed to PLPOA upon the completion of projects and PLPOA's financial ability to maintain such property. <u>Id.</u> at 22. This testimony by Carey was confirmed by the testimony of numerous other witnesses, including EIC representatives who sold Pagosa properties and individuals who purchased Pagosa properties from EIC. <u>Id.</u> at 22-36. By contrast, individuals, who were employed by FCI at or following the time FCI bought out EIC's stock, testified that FCI did not refer to PLPOA's eventual ownership of the recreational amenities as a selling point to potential property owners; in fact, they testified, it was FCI's policy to refer to the recreational amenities as FCI's assets, consistent with the language of the DORs, the PRs, and the SORs. <u>Id.</u> at 36-41.

FCI also presented evidence demonstrating that it had made capital investments of approximately $3.2 million for improvements to the recreational amenities and that it had consistently covered all costs associated with the recreational amenities for which it retained legal title.  Id. at 41.

Finally, regarding the topic of FNBB's mortgage lien, FNBB introduced evidence showing that it initially secured a lien on the amenities in 1983, when Pagosa was added as collateral for a pre-existing loan from FNBB to FCI.  Id. at 45.  That lien was documented in a Deed of Trust dated March 2, 1983, and duly recorded in the office of the Clerk and Recorder of Archuleta County, Colorado, on March 4, 1983.  Id.  At trial, the parties agreed by stipulation that "FNBB is the owner and holder of a mortgage lien on the property which is the subject of this lawsuit (except Pinion Lake)."  Id. at 46.

Following the trial, the bankruptcy court concluded: (1) FCI was the legal owner of the recreational amenities at the time of its bankruptcy filing; (2) FCI was also the equitable owner of the recreational amenities at the time of its bankruptcy filing; (3) FCI's legal and equitable ownership were subject to a restrictive covenant; (4) FNBB's liens were valid; and (5) FCI's counterclaim pursuant to 11 U.S.C. § 544 was moot with respect to the ownership issues, and § 544 did not apply to the restrictive covenant.  Id. at 56-62.  In sum, the bankruptcy court held that the recreational amenities were legally and equitably owned by FCI, subject to the mortgages and liens held by FNBB and the restrictive covenant.  Id. at 62-63.

On appeal, the district court affirmed the bankruptcy court's order in its entirety.  District court order, slip op. at 17.  This appeal and cross-appeal followed.

II.

PLPOA argues that the bankruptcy court erred in holding that PLPOA is not the equitable owner of the recreational amenities under either a promissory estoppel theory or a trust theory. To begin, PLPOA maintains that under the "collateral matters" doctrine, collateral oral promises are enforceable under Colorado law. See Stevens v. Vail Assocs., 472 P.2d 729, 731 (Colo. Ct. App. 1970) ("[w]e determine the better rule to be that oral agreements as to off-site improvements or land uses of adjacent properties may be independent collateral agreements which need not be included in the deed conveying property and are not merged"). Moreover, PLPOA argues, a party making such collateral promises may be equitably estopped from asserting its technical legal rights. See Kiely v. St. Germain, 670 P.2d 764, 769 (Colo. 1983) (en banc) (recognizing as part of Colorado common law the promissory estoppel provision of the Restatement (Second) of Contracts). PLPOA argues that, in the present case, the bankruptcy court was bound to consider promises made outside of the written agreements between purchasers of Pagosa properties and sales representatives for EIC, FCI's predecessor in interest. PLPOA thus points to evidence that EIC representatives *promised* prospective purchasers of Pagosa property that the recreational amenities would be transferred to PLPOA upon certain conditions. Furthermore, PLPOA maintains, purchasers of Pagosa property reasonably relied upon EIC's collateral promises in deciding to buy Pagosa properties. Consequently, PLPOA concludes, the purchasers obtained an equitable ownership interest in the recreational amenities under a promissory estoppel theory. Therefore, while the DORs did not create a legal obligation for the developer to turn over the recreational amenities, PLPOA argues, those documents together with the developer's oral promises did create such a legal obligation which was contingent upon certain conditions being met. PLPOA then argues that those conditions have been met because the bankruptcy

court ordered FCI to convey the last 900 available lots to Archuleta County in payment of back taxes, thereby substantially completing the development and also establishing PLPOA's financial ability to maintain the recreational amenities (because all Pagosa property owners, including Archuleta County, are required to pay fees to PLPOA).

PLPOA alternatively argues that, as a result of FCI's purported obligation to convey the recreational amenities to PLPOA, FCI has become a trustee holding bare legal title to the recreational amenities for the benefit of PLPOA's members -- the owners of the equitable estate. In support of this trust argument, PLPOA relies on <u>Bishop & Diocese of Colorado v. Mote</u>, 716 P.2d 85, 100 (Colo.) (en banc) (<u>Mote</u>), <u>cert. denied</u>, 479 U.S. 826 (1986), in which the Colorado Supreme Court held that the "the intent to create a trust can be inferred from the nature of property transactions, the circumstances surrounding the holding of and transfer of property, the particular documents or language employed, and the conduct of the parties." PLPOA argues that, in the present case, the DORs manifest the parties' intent to create a trust because it declares that all Pagosa property owners and residents have a continuous, perpetual right to use and enjoy the recreational amenities; in other words, PLPOA argues, "the declaration creates a continuing benefit to be exclusively enjoyed by the defined class of 'beneficiaries'" and therefore vested ownership in that class. Brief for Appellant at 35.

Finally, PLPOA argues that the bankruptcy court erred in holding that the recreational amenities are subject to a valid mortgage lien held by FNBB. PLPOA contends that, when FCI used the recreational amenities as collateral for a loan from FNBB, the mortgage lien could not attach to the equitable estate which had already vested in the Pagosa lot owners. Therefore, PLPOA maintains, "since the mortgage cannot attach to the equitable estate, its purported attachment to FCI's legal title is

ineffective to prevent transfer to PLPOA because that title is held as trustee for the benefit of the property owners."  Brief for Appellant at 44.

III.

When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations <u>de novo</u> and findings of fact for clear error. <u>Wegner v. Grunewaldt</u>, 821 F.2d 1317, 1320 (8th Cir. 1987).  As the second court of appellate review, we conduct an independent review of the bankruptcy court's judgment applying the same standards of review as the district court.  <u>Id.</u>  With these standards in mind, we have carefully considered the record before us and the arguments presented by the parties. We conclude that PLPOA is not the equitable owner of the recreational amenities.

As PLPOA recognizes, the purchase agreements which governed Pagosa lot sales did not mention the transfer of the recreational amenities. Other relevant documents (i.e., those which were either on public record or shown to prospective purchasers of Pagosa properties) expressly or implicitly indicated that the developer retained the right, or option, to dispose of the recreational amenities.  In particular, the DORs provide that "[t]he ownership of all recreational facilities . . . shall be in [the developer]" and the developer "may convey . . . any or all" of the recreational amenities to PLPOA.  PLPOA is required to accept title upon such conveyance, unless the property is financially encumbered or the relevant project has not been substantially completed or PLPOA lacks financial ability to maintain the property in question.  Therefore, if FCI had not exercised its option to convey some of the recreational amenities at the time of its bankruptcy filing, PLPOA had not acquired an ownership interest in those amenities.

-10-

As to the representations made by EIC sales representatives to prospective lot purchasers, the bankruptcy court did not clearly err in finding that the Pagosa lot purchasers' alleged reliance on the oral representations of EIC sales representatives regarding the conveyance of the recreational amenities to PLPOA was not reasonable in light of the purchasers' constructive notice of the DORs, the express language to the contrary contained in the documents which they signed,[7] and the relevant written descriptions of the property being sold.[8] Bankruptcy court order, slip op. at 54-55. Thus, the bankruptcy court did not err in concluding that, under a promissory estoppel analysis, PLPOA is not the equitable owner of the recreational amenities.

We also hold that PLPOA's trust argument fails on the merits, notwithstanding FCI's contention that PLPOA failed to advance this trust argument in the bankruptcy court. Under Colorado's statutes, a trust conveying title to real estate, unless created by act or operation of law, must be in writing and signed by the grantor. Colo. Rev. Stat. Ann. § 38-10-106 (West 1996). No such signed written trust exists in the present case. To the extent PLPOA suggests that the DORs may be construed as a written trust, there is insufficient evidence of an intent to create a trust, as required under Colorado case law. Ayres v. King (In re Estate of Daniels), 665 P.2d 594, 595 (Colo. 1983) (en banc) ("In order to create an express trust it is essential that the settlor intend

---

[7]For example, the real estate contracts stated that "no agent or representative of the 'Seller' shall have any authority whatsoever . . . to make any other agreement or representation on behalf of the 'Seller.'" Pagosa Lakes Property Owners' Ass'n v. Fairfield Communities, Inc. (In re Fairfield Communities, Inc.), Nos. 92-4078/92-4079, slip op. at 55 (Bankr. E.D. Ark. Mar. 11, 1994) (hereinafter bankruptcy court order) (quoting real estate contracts).

[8]The contracts of purchase contained a legal description of the property that was being sold and did not mention an ownership interest in the recreational amenities. Id.

that a trust come into existence."). While "Colorado recognizes that the intent to create a trust can be inferred from the nature of property transactions, the circumstances surrounding the holding of and transfer of property, the particular documents or language employed, and the conduct of the parties," the inference of an intent to create a trust must come from "'[c]lear, explicit, definite, unequivocal and unambiguous language or conduct.'" Mote, 716 P.2d at 100 (citations omitted). In the present case, neither the language of the relevant documents nor the conduct of the parties -- including the statements made by sales representatives for EIC -- satisfies this standard. Accordingly, no finding of a trust is warranted as a matter of law.

IV.

In sum, upon careful de novo review, we hold that the bankruptcy court correctly concluded that PLPOA does not have an equitable ownership interest in the recreational amenities. We agree with the bankruptcy court's conclusion that PLPOA's interest in the recreational amenities exists in the form of a restrictive covenant, which is manifested in the DORs' dedication of the parks, recreational facilities, and other amenities to the use and enjoyment of members or associate members of PLPOA and other qualifying Pagosa residents. As to FNBB's interest in the recreational amenities, we further agree with the bankruptcy court's determination that FNBB duly recorded its lien, which remains valid, subject to the restrictive covenant held by PLPOA, of which FNBB had constructive notice via the DORs on record. Finally, having held that PLPOA does not have an equitable ownership interest in the recreational amenities, we dismiss as moot FCI's cross-appeal asserting that, if PLPOA is held to have an equitable ownership interest, 11 U.S.C. § 544 operates to avoid

PLPOA's interest.[9]

For the foregoing reasons, the order of the district court affirming the order of the bankruptcy court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[9]FCI does not argue that § 544 avoids PLPOA's restrictive covenant, although conceivably that argument might be inferred from FCI's claim that "[t]he bankruptcy court erred in determining that § 544 does not avoid any equitable interest of the PLPOA in the recreational amenities."  Brief for Appellee/Cross-Appellant FCI at 46.  In any case, we agree with the bankruptcy court's conclusion that, in the present case, § 544 does not operate to avoid PLPOA's restrictive covenant.  Bankruptcy court order, slip op. at 61-62.