# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3728

_____

| | | |
|---|---|---|
| In re: Falcon Products, Inc. a Delaware Corporation | * | |
| | * | |
| | * | |
| Debtor. | * | |
| _____ | * | |
| | * | |
| Pension Benefit Guaranty Corporation, | * | Appeal from the United States |
| | * | District Court for the |
| Appellant, | * | Eastern District of Missouri. |
| | * | |
| v. | * | |
| | * | |
| Falcon Products, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 12, 2007
Filed: August 15, 2007

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Under the Employee Retirement Income Security Act ("ERISA"), an employer seeking reorganization in Chapter 11 bankruptcy may petition the bankruptcy court for termination of a pension plan if the employer can meet certain requirements, including, as relevant here, demonstrating to the court that it would be unable to pay

its debts unless the pension plan is terminated. See 29 U.S.C. § 1341(c)(2)(B)(ii)(IV). The Pension Benefit Guarantee Corporation ("PBGC") appeals the district court's[1] decision affirming the bankruptcy court's[2] termination approval of three Falcon Products, Inc. ("Falcon") pension plans. We also affirm.

Falcon filed Chapter 11 petitions on January 31, 2005, and continued operating its businesses as debtors in possession. On September 5, 2005, Falcon moved the bankruptcy court for a determination that it met ERISA's requirements under the Reorganization Test[3] for terminating Falcon's three pension plans. Considering the three pension plans in the aggregate, Falcon asserted that it could not afford to pay the required contributions for the pension plans, estimated at $18,903,156 for the period 2005 through 2012. PBGC responded that ERISA required Falcon to demonstrate that the requirements of the Reorganization Test were met on a plan-by-plan basis as opposed to the aggregate basis proposed by Falcon.

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

[2]The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

[3]For a Chapter 11 debtor, the standards for a distress termination require that four conditions be met:
1. as of the proposed termination date, the employer has filed or has had filed against it, a petition for reorganization under the Bankruptcy Code;
2. the case has not, as of the proposed termination date, been dismissed;
3. the employer has provided the PBGC any request for bankruptcy court approval of the termination; and
4. the bankruptcy court determines that, unless the plan is terminated, the employer will be unable to pay all its debts pursuant to a Reorganization Plan and will be unable to continue in business outside the Chapter 11 reorganization process and the court approves the termination. See 29 U.S.C. § 1341(c)(2)(B)(ii)(I)-(IV).

After conducting a hearing, the bankruptcy court concluded that the pension plans could be considered in the aggregate and decided that Falcon had met the Reorganization Test for termination of the three pension plans. Additionally, the bankruptcy court rejected PBGC's argument that Falcon could afford the minimum payments on at least one of its pension plans based upon Falcon's funding projections, noting those projections were made under the guarantee of a $50 million cash infusion from third-party investors, who required termination of the pension plans as a condition of investment. A timely appeal to the district court resulted in an affirmance of the bankruptcy court's decision. This appeal follows.

"When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error. As the second court of appellate review, we conduct an independent review of the bankruptcy court's judgment applying the same standards of review as the district court." In re Fairfield Pagosa, Inc., 97 F.3d 247, 252 (8th Cir. 1996) (citations omitted).

In presenting its appeal, PBGC asks this court to reach a contrary conclusion to that reached by the United States Court of Appeals for the Third Circuit in In re Kaiser Aluminum Corp., 456 F.3d 328 (3d Cir. 2006). In that case, Kaiser Aluminum Corporation ("Kaiser") sought termination of six pension plans under ERISA's Reorganization Test. Considering the plans in the aggregate, the bankruptcy court determined that termination of the plans was necessary for Kaiser to emerge from Chapter 11. PBGC challenged this decision, arguing that a plan-by-plan approach should have been utilized by the bankruptcy court and that such an approach would have resulted in a determination that the company could afford at least some of the pension plans.

The Kaiser Court found that Congress had not provided, through the ERISA statute, any guidance on how to apply the Reorganization Test on a plan-by-plan

approach and opined that, had Congress intended the courts to apply a plan-by-plan approach, details on how to implement such an approach would have been provided in the statute. Id. at 335-39. According to the Third Circuit, adoption of a plan-by-plan approach without further "guidance on the mechanics of this approach [would make] it essentially unworkable." Id. at 338. Further, the Kaiser Court explained that "a plan specific approach to the reorganization test would disrupt the bankruptcy courts in their traditional role as agents of equity" because a plan-by-plan approach would require the bankruptcy courts to "pick and choose" among the various pension plans that the company sought to terminate. Id. at 339-43. This plan-by-plan approach would result in some workers receiving their full benefits while others would receive only what is guaranteed under ERISA, thus "on the whole, an aggregate approach is more in line with the objectives of the Bankruptcy Code." Id. at 342.

The Third Circuit also rejected PBGC's argument that the courts should defer to PBGC's interpretation of ERISA statutes. The Kaiser Court held such an argument "is improper because the PBGC has neither the expertise nor the authority to determine when a plan should be terminated under the reorganization test. Issues relating to an employer's bankruptcy and reorganization are within the expertise of bankruptcy courts, not the PBGC." Id. at 344. Additionally, PBGC could not identify any other situations where it had opposed the use of the aggregate approach, nor did the regulations promulgated by PBGC state how bankruptcy courts would apply a plan-by-plan approach to the Reorganization Test. Id. at 345-46.

Falcon responds that this court need not consider whether to follow the Kaiser opinion because, even if the bankruptcy court employed a plan-by-plan approach, the pension plans would have to be terminated under the Reorganization Test. Falcon's claim is based on the notion that without the promised $50 million cash infusion, which was conditioned on termination of all three of the pension plans, Falcon would have been forced to liquidate.

PBGC counters that, while it does not dispute the investors' condition of termination of all pension plans, ERISA mandates that the bankruptcy court conduct a plan-by-plan analysis under the Reorganization Test, and because the bankruptcy court failed to do so, reversal is appropriate.

We agree with Falcon that it is unnecessary for this court to address whether ERISA mandates a plan-by-plan or aggregate approach. See Land v. Washington County, Minn., 243 F.3d 1093, 1095-96 (8th Cir. 2001) ("We may affirm the judgment on any grounds supported by the record . . . ."); cf. United States v. Unit No. 7 & Unit No. 8 of Shop in Grove Condo., 890 F.2d 82, 85 (8th Cir. 1989) (en banc) (R. Arnold, J. dissenting) ("[A] decision on a narrower, as-applied ground should normally be preferred, as a matter of judicial restraint, to one based on a broader, facial ground."). In its findings of fact, the bankruptcy court found that Falcon's Reorganization Plan was premised on an infusion of $50 million from investors, who had "expressly conditioned their willingness to do so on the elimination of all or virtually all of [Falcon's] unsecured obligations, including the underfunding obligation to the Pension Plans" and that "[w]ithout this substantial restructuring, [Falcon's] Plan of Reorganization was not feasible." (Bankr. Order ¶ 13.) An investor representative "testified unequivocally that the [investors] would not invest $50 million in new cash unless the Pension Plans were terminated," and "PBGC submitted no contrary evidence." (Bankr. Order ¶ 35.) Further, Falcon had made substantial attempts to locate other sources of funding or investment without success, and PBGC did not present "any evidence of specific additional steps [Falcon] could have taken or additional potential investors [Falcon] should have contacted." (Bankr. Order ¶¶ 21-28.) Thus, the bankruptcy court found that "the absence of the $50 million investment . . . would force [Falcon] to liquidate" and "[i]n such a liquidation, the Pension Plans would be terminated." (Bankr. Order ¶ 35.) Based on these factual findings, the bankruptcy court concluded that "[Falcon] cannot achieve their Projections without a $50 million cash infusion[,] they cannot obtain that infusion if the Pension Plans are not terminated," (Bankr. Order ¶ 42), and the investors'

"decision to condition their [$50 million investment] on the termination of the Pension Plans is reasonable" (Bankr. Order ¶ 44).

PBGC cites to In re Philip Services Corp., 310 B.R. 802, 808 (Bankr. S.D. Tex. 2004) for the proposition that investors' conditions cannot replace the analysis the bankruptcy court is required to conduct under ERISA. However, the court in Philip Services explained that, while it is improper to allow an investor to make the decision reserved to the bankruptcy court under ERISA, it is the duty of the bankruptcy judge to "look to [the] existential financial reality and try to judge whether the plan provisions are necessary or whether they are merely desired by the entities that would benefit from the termination." Id.

Here, the bankruptcy court reviewed the extensive steps Falcon had taken to secure additional funds, it noted that the only investments Falcon was successful in securing were conditioned on a termination of all three pension plans, and the court found that, absent the $50 million in additional funding, Falcon would be forced to liquidate which would result in a termination of all three pension plans. In light of these factual findings, which are not clearly erroneous, it is not necessary for this court to consider the question of whether the pension plans should have been considered in the aggregate or on a plan-by-plan approach. See In re Wire Rope Corp. of Am., Inc., 287 B.R. 771, 777-78 (Bankr. W.D. Mo. 2002) (threshold question is whether debtor can obtain confirmation of any Reorganization Plan without termination of pension plans; if unable to do so, bankruptcy court's approval of distress termination of pension plans is warranted). Based on the bankruptcy court's factual findings that Falcon cannot survive outside of Chapter 11 bankruptcy without the $50 million investment which is conditioned on termination of the pension plans, the bankruptcy court correctly decided that under section 1341 termination of all three Falcon pension plans is warranted. Cf. In re Reynolds, 425 F.3d 526, 531 (8th Cir. 2005) (question of whether student loan debts pose "undue hardship" is a question of law which is

-6-

reviewed de novo; subsidiary findings of fact on which the legal conclusion is based is reviewed for clear error), <u>cert. denied</u>, 127 S. Ct. 46 (2006).

Accordingly, we affirm the district court's order in turn affirming the judgment of the bankruptcy court.

_____