# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1792

_____

Rita Fix,                                          *
                                                   *
            Appellee,                              *
                                                   *
      v.                                           *
                                                   *
First State Bank of Roscoe,                        *
                                                   *
            Appellant.                             *

_____

No. 07-1798                    Appeals from the United States
                              District Court for the
_____                    District of South Dakota.

Rita E. Fix,                                       *
                                                   *
            Appellee,                              *
                                                   *
      v.                                           *
                                                   *
John S. Lovald,                                    *
                                                   *
            Appellant.                             *

_____

Submitted: January 14, 2008
Filed: March 17, 2009

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

This bankruptcy proceeding involves a dispute between Rita Fix and the First State Bank of Roscoe (the Bank) over Fix's home, which the Bank sold to a third party despite representing to Fix she could possess the home as long as she lived. The district court determined Fix enjoyed a homestead right in the property. The district court also determined she did not – by signing a settlement agreement with the Bank – release the claims she may have against the Bank for its alleged misconduct related to selling her home.

The Bank appeals, arguing Fix only had a contractual interest in the property rather than a homestead, and released all claims she may have had against it. John S. Lovald, the bankruptcy trustee, also appeals arguing Fix's interest in the home is a personal property interest which belongs to the bankruptcy estate, and the estate is free to pursue the claims against the Bank because the estate was not a party to the settlement agreement. We reverse and remand for further proceedings.

I

Rita Fix lived in the same home for almost sixty years, between 1948 and 2006. In May 1997, she and her husband signed a contract for deed with their son and daughter-in-law, Jeff and Marie Fix, to convey the property that included the home – the NW1/4 NW1/4 of Section 26, Township 120, Range 71, Faulk County, South Dakota. Fix reserved a life estate "in and to the house, outbuildings, and immediately surrounding yard." Appellee's App. 161. Two years later, Jeff and Marie approached the Bank seeking additional financing for their farm operation. The Bank agreed to give them the financing if they obtained a warranty deed on the property. Fix was reluctant to give up her life estate interest, however, which was a prerequisite to Jeff and Marie obtaining a full warranty deed. In order to facilitate the financing, the Bank wrote a letter to Fix on March 12, 1999, which stated:

-2-

> This letter is to memorialize to you that you are deeding NW1/4NW1/4 26-120-71, Faulk County, South Dakota, to Jeffrey F. Fix and Marie Fix. First State Bank of Roscoe will be taking a real estate mortgage on this real estate. In the event that for any reason the bank becomes the owner of the described real estate, you will have full right of possession to the home on the premises as long as you are living.

Appellant's App. 128. The Bank's president, John Beyers, signed the letter.

As a result of the Bank's letter, Fix gave a warranty deed to Jeff and Marie on March 15, 1999. The warranty deed used the term "grant," which, under South Dakota law, carries with it the implied covenant that the grantor has not previously conveyed the same interest in the property to someone else, and the implied covenant that, at the time of the instant conveyance, the property is free from all encumbrances suffered by the grantor or any person claiming under him, e.g., there is no retained life estate. See S.D. Codified Laws § 43-25-10.

Several years passed, during which time Fix lived in the home. In March 2004, she filed a Chapter 13 bankruptcy petition. She did not claim a homestead exemption, nor did she list as personal property her interest based on the March 1999 letter from the Bank. In June 2005, she converted her petition to Chapter 7. In October 2005, about the time she received a discharge of her debts, the Bank filed an adversary complaint against her. Fix's son, Jeff, had granted the Bank a security interest in his grain. The alleged scheme involved Jeff selling grain – covered by the Bank's mortgage – in Fix's name. She would thereafter endorse the grain checks, deposit them in her account, and then write her son a check in the same amount. The Bank claimed the Fixes diverted over $125,000 of secured proceeds through the scheme.

In November 2005, about a month after the Bank brought the fraud claim against Fix, Jeff and Marie conveyed the home and the property on which it sits to the Bank pursuant to a non-merger deed in lieu of foreclosure. The transfer of the home

and property was part of a settlement between the Bank and Jeff and Marie in their own bankruptcy proceeding.

Meanwhile, the Bank tried to reach a settlement with Fix regarding the fraud complaint against her. After being told by its attorney that a global settlement had been reached with Fix, the Bank sold the home in question outright to James and Pamela Baer. The deed was recorded on December 9, 2005. Fix was still living in the home at the time.

On February 16, 2006, Fix's bankruptcy attorney signed a "Settlement Agreement" on her behalf resolving the Bank's fraud claim against her. Fix signed the agreement on March 8, 2006, and a Bank representative signed it on March 14, 2006. Two days later, the Bank presented the agreement to the bankruptcy court for approval, and the bankruptcy court approved it. The agreement contained a release clause which provided:

> As a part of this agreement, and in consideration for the mutual covenants contained herein, [Fix] hereby releases, acquits and forever discharges [Bank] and all of [Bank's] officers, directors, employees, representatives, agents and assigns, past or present, from any and all liability whatsoever, whether presently existing, known or unknown, contingent or liquidated, including all claims, demands, and causes of action of every nature which [Fix] has, or may claim to have, by reason of any transactions occurring between [Fix] and the above institution or persons. [Fix] hereby acknowledges that no outstanding loan commitments have been made to [Fix] by [Bank].

Appellant's App. 138-39.

On March 17, 2006, the day after the bankruptcy court approved the settlement, the Baers' attorney wrote Fix stating the Baers were "quite anxious to take possession" of the home, and asking "when you anticipate your departure so they can arrange for

the utilities to be transferred and propane delivered." Id. at 60. According to Fix, this was the first notice she had that the Bank sold her home.

On March 30, 2006, Fix filed a complaint against the Bank in South Dakota circuit court. The complaint alleged five causes of action: 1) the right to possession of her home; 2) breach of fiduciary duty; 3) intentional infliction of emotional distress; 4) deceit in getting her to deed away her home; and 5) fraudulent misrepresentation in deceiving her into deeding away her home. The complaint also included a request for exemplary damages. Her counsel represented to the bankruptcy trustee that the suit was a million dollar case. Shortly thereafter, Fix amended her bankruptcy schedules to claim a homestead exemption for the first time. She represented the value of her home as $34,605.

The Bank filed another adversary proceeding in bankruptcy court seeking an injunction of the state court lawsuit. The bankruptcy court entered a preliminary injunction preventing Fix from going forward with the suit. After the adversary proceeding was tried to the bankruptcy court, it entered a permanent injunction preventing Fix from pursuing the state court action against the Bank.

Fix appealed the bankruptcy judge's order to the district court. The district court reversed the bankruptcy court, concluding: 1) Fix retained a life estate interest in real property as a consequence of the promise from the Bank in the March 1999 letter; 2) the life estate interest entitled Fix to a homestead exemption in her bankruptcy proceeding; 3) the settlement agreement did not waive or destroy the homestead or life estate interest; 4) Fix had no notice of a potential claim against the Bank until it breached its agreement in March 2006, which occurred after Fix had received her bankruptcy discharge; 5) the state court lawsuit belonged to Fix, not to the bankruptcy trustee; and 6) the fraud claim settlement did not release the claims Fix had against the Bank related to the sale of her home. As a result of the district court's order, Fix's state court lawsuit against the Bank was allowed to proceed. The state

court circuit judge determined the request for exemplary damages was appropriate and granted a motion to pursue discovery and a motion for a trial of that claim.

Both the Bank and the bankruptcy trustee filed timely appeals of the district court's order. The issues on appeal relate to: 1) the nature of Fix's interest in her home as the result of the Bank's letter stating she could live there until her death; 2) whether any possible causes of action against the Bank belong to Fix or her bankruptcy estate; and 3) the effect on those causes of action, if any, of the release Fix signed as part of the fraud claim settlement.

## II

"When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error." In re Falcon Prods., Inc., 497 F.3d 838, 840-41 (8th Cir. 2007) (quoting In re Fairfield Pagosa, Inc., 97 F.3d 247, 252 (8th Cir.1996)). "As the second court of appellate review, we conduct an independent review of the bankruptcy court's judgment applying the same standards of review as the district court." Id.

Although the facts giving rise to this dispute are somewhat convoluted, we believe the legal questions presented are relatively straightforward. The primary question raised on appeal is whether, after conveying by warranty deed the property in question to her son and daughter-in-law in March 1999, Fix retained an interest in real estate upon which to claim a homestead exemption. The bankruptcy court concluded she did not. We agree.

South Dakota law requires an ownership interest in property to claim a homestead exemption. See S.D. Codified Laws § 43-31-2 ("The homestead must embrace the house used as a home by the *owner thereof*[.]") (emphasis added); see

also United States through Farmers Home Admin. v. Nelson, 969 F.2d 626, 631 (8th Cir. 1992) ("Homestead rights under South Dakota state law accrue only to *owners* who use the property as a home[.]") (emphasis added).  When Fix deeded the property to Jeff and Marie by outright warranty deed, she gave up the life estate interest she had in the property.  In exchange, she received from the Bank a future contingent right to possession of the home for the rest of her life in the event the Bank became the owner of the home.  This interest was not an interest in real estate, but rather a personal property interest. See Foster v. Foster, 673 N.W.2d 667, 671-72 (S.D. 2003) (holding an agreement granting an option to purchase real estate was personal property and belonged to the bankruptcy estate).  The absence of an interest in real estate is demonstrated by the fact that the Bank, when it wrote the letter in March 1999, had no present interest in the real property at issue, and thus could not convey such an interest to Fix.

In deciding Fix did not retain an interest in real property upon which to claim a homestead exemption, we are focusing solely upon the *nature* of the interest she retained.  Her interest was in the nature of personal property, not real property.  In so holding, we express no opinion on the validity or enforceability of the interest Fix obtained from the Bank.

III

The next question we must address is whether the five causes of action Fix brought against the Bank in March 2006 belong to her or to her bankruptcy estate.  If the causes of action belong to the bankruptcy estate, we need not address the Bank's contention that Fix released the claims as part of the fraud claim settlement because the bankruptcy estate was not a party to that settlement.  If, on the other hand, we determine all or some of the causes of action belong to Fix, we must go on to address whether she released the claims in her settlement agreement with the Bank.

-7-

As stated above, the contingent interest in the home that Fix received from the Bank via the March 1999 letter was in the nature of personal property, not real property. All legal and equitable interests of a debtor in personal property become property of the bankruptcy estate as of the commencement of a bankruptcy. Whetzal v. Alderson, 32 F.3d 1302, 1303 (8th Cir. 1994). This includes a contractual right of the type Fix obtained from the Bank in March 1999. Cf. Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 242 (3rd Cir. 2001) (noting the broad definition of estate property encompasses rights arising from ordinary contracts). In addition, when Fix's bankruptcy proceeding was converted from Chapter 13 to Chapter 7, any property that was part of the bankruptcy estate at the time of the original filing remains the property of the bankruptcy estate after the conversion. See 11 U.S.C. § 348(f)(1)(a). Thus, at the time the bankruptcy was filed, and later when the bankruptcy was converted from Chapter 13 to Chapter 7, Fix's rights against the Bank were part of the bankruptcy estate.

The more difficult question is whether this potential contractual interest was still part of the bankruptcy estate when Fix's causes of action accrued, that is, when the Bank allegedly breached the agreement by selling the home in December 2005. The Bank's alleged breach occurred after Fix had already received a discharge under Chapter 7. Thus, while this case involves a pre-petition interest, the claims at issue did not accrue until post-petition. The bankruptcy trustee contends in such a situation, where the contract interest was property of the estate at the time the bankruptcy petition was filed, but the breach occurs post-petition (even post-discharge), the breach relates back such that any causes of action arising from the breach constitute property of the estate. See In re Strada Design Assocs., Inc., 326 B.R. 229, 236 (S.D.N.Y. 2005) ("[A] cause of action will be 'property of the estate' if it has sufficient roots in the debtor's pre-bankruptcy activities and is not entangled with the debtor's 'fresh start,' regardless of when the claim accrues under state law") (citing Segal v. Rochelle, 382 U.S. 375, 380 (1966)); see also Drewes v. Vote (In re Vote), 276 F.3d 1024, 1026-27 (8th Cir. 2002) (applying Segal).

Here, all five causes of action against the Bank arose from the March 1999 letter it wrote purporting to allow Fix to live in her home until she died. Her reluctance to relinquish her life estate interest occurred in 1999, the Bank wrote the letter to induce her to give up her life estate interest in 1999, and Fix's decision to warranty deed the home to Jeff and Marie in exchange for the Bank's letter occurred in 1999. These activities were not related to Fix's bankruptcy, or the fresh start she received when her debts were discharged in October 2005. Thus, we believe at least four of the five causes of action Fix brought against the Bank in March 2006 (the right-to- possess claim, the breach-of-fiduciary-duty claim, the deceit claim, and the fraudulent-misrepresentation claim) have sufficient roots in Fix's pre-bankruptcy activities to be considered property of the bankruptcy estate, even though the Bank's alleged breach of its promise occurred post-petition.

The intentional infliction of emotional distress claim presents a closer question. The elements of a prima facie claim for intentional infliction of emotional distress are: 1) the defendant committed an act amounting to extreme and outrageous conduct; 2) with the intent to cause severe emotional distress; 3) the act must be the cause in-fact of the distress; and 4) the plaintiff must suffer an extreme disabling emotional response to the conduct. Nelson v. WEB Water Dev. Ass'n, 507 N.W.2d 691, 698 (S.D. 1993). The act Fix alleges was extreme and outrageous on the part of the Bank was sale of the home to the Baers in December 2005. Fix's alleged emotional distress did not occur until she learned about the sale in March 2006. Thus, all of the prima facie elements of Fix's alleged claim occurred post-petition. While Fix's claim for intentional infliction of emotional distress, like her other claims, relates to the Bank's March 1999 letter, we do not believe it is sufficiently rooted in the pre-bankruptcy past to be considered part of her bankruptcy estate.

IV

Because we conclude the intentional infliction of emotional distress claim belongs to Fix, it is necessary to address whether the release she signed in favor of the Bank as part of the fraud settlement bars that claim. We conclude the release does not apply to this alleged tort claim. South Dakota law prohibits a release which attempts to "exempt anyone from responsibility for his own fraud or willful injury to the person . . . of another[.]" S.D. Codified Laws § 53-9-3; see also Holzer v. Dakota Speedway, Inc., 610 N.W.2d 787, 793 (S.D. 2000) ("[R]eleases that are construed to cover . . . intentional torts are not valid and are against public policy."). A claim for intentional infliction of emotional distress is an intentional tort claim, and thus would not be affected by the release Fix signed.

V

The order of the district court is reversed, and this case is remanded for further proceedings consistent with this opinion.

_____

-10-