**In re Bruce A. CARLSON, Debtor.**

No. 09–50058.

United States Bankruptcy Court, D. Minnesota.

Oct. 9, 2009.

Sam Calvert, Sam V. Calvert Attorney at Law, St. Cloud, MN, for Debtor.

### ORDER GRANTING MOTION OF VILLAGE BANK FOR RELIEF FROM STAY

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court for hearing on the motion of Village Bank for relief from the automatic stay of

11 U.S.C. § 362(a). Village Bank appeared by its attorney, Christopher P. Fischer. Trustee Terri A. Running appeared on behalf of the bankruptcy estate. The following order is based upon the record made for the hearing, including the parties' several written submissions.

When the Debtor commenced this Chapter 7 case on January 19, 2009, he, his wife, and Kodiak Homes, Inc. ("Kodiak") were the three named defendants in an action commenced by Village Bank in the Minnesota State District Court for the Seventh Judicial District, Mille Lacs County. In that action, Village Bank sought to foreclose a mortgage against certain real estate in Mille Lacs County, Minnesota, that was titled in one or both of the Carlsons. The Carlsons pledged this property to secure the Debtor's personal guaranty of Kodiak's debt to the Bank.[1]

The three named defendants had interposed a single answer to the complaint. The answer included a counterclaim against the Bank, pleaded by Kodiak alone.[2] The counterclaim had four counts, separately sounding under theories of tortious interference with contractual relations and with business expectancy; breach of contract; and breach of the covenant of good faith and fair dealing. In part, these claims fall within the theories of recovery known colloquially as "lender liability."[3]

When the Debtor filed for bankruptcy, he did not list either the Mille Lacs County real estate or the counterclaim in his property schedules. He has not claimed his interest in either such asset as exempt. As a result, both interests are property of the bankruptcy estate, by operation of 11 U.S.C. § 541(a). With the Bank's collateral and the counterclaim holding that status, the Bank's action to foreclose its mortgage and its defense of the counterclaim are stayed by operation of 11 U.S.C. §§ 362(a)(3)-(4).[4]

The Bank now seeks relief from that stay, so as to resume its prosecution of the foreclosure-by-action against the Mille

1. The Bank also sought a money judgment against the Debtor for any unsatisfied, post-foreclosure deficiency on his debt under the guaranty.

2. The counterclaim section of the responsive pleading was not worded as precisely as it should have been in its identification of the aggrieved party or parties seeking relief. The prayer for relief under the counterclaim identifies Kodiak as the only defendant seeking an award of damages.

3. In sum, Kodiak pleaded that the Bank had interfered with its pending sale of real estate in Anoka County, Minnesota, that secured a separate debt from Kodiak to the Bank. The allegation was that the Bank had induced the prospective buyers to back out of that purchase, on the representation that the buyers would do better to buy the property from the Bank after a completed foreclosure against Kodiak. Kodiak maintained that a sale of the Anoka County property would have enabled Kodiak to satisfy the separate debt secured by that property, and to substantially pay down the debt secured by the Mille Lacs County property owned by the Debtor and his wife. Kodiak also accused the Bank of unlawfully attempting to assert more of a secured position against both properties than it actually possessed under line-of-credit arrangements. (The mortgage instruments contained terms that capped the amount of debt secured by the grants of liens.)

4. Under these provisions,

(a) ... a petition filed under [the Bankruptcy Code] operates as a stay, applicable to all entities, of—

...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate ...

Under an order entered on April 3, 2009, the automatic stay has remained in force pending the hearing on the Bank's motion and the Court's disposition.

Lacs County property.[5] It argues that it has a basis for that relief under 11 U.S.C. § 362(d)(2). It posits that the amount of the debt under Kodiak's note "exceeds $112,507.62, inclusive of fees and costs," that the real estate "is subject to [the Bank's] Mortgage in the principal amount of $50,000.00" pursuant to the Debtor's personal guaranty, and that "the appraised market value of the Property is $18,000.00, far less than the amount due under the Note, the Mortgage, and the Guaranty."[6]

The Trustee of the Debtor's bankruptcy estate opposes the motion, on the ground that she "believes that the Counterclaim has merit," that "the bank's debt cannot be established until the Counterclaim is liquidated," and that there is a bona fide dispute as to whether the Debtor had equity in the real estate when he filed for bankruptcy.[7] She would have the Bank denied relief from stay, in favor of her "removing" the counterclaim to this Court, or commencing an independent action against the Bank under the same theories here. That matter would be litigated to a conclusion before the Bank's right to proceed was addressed.

The Bank insists that "there is no legal merit to the Counterclaim," that the counterclaim was "raised merely as a tactic to delay [the Bank] from exercising its valid rights ...," and that all the issues previously put into suit in Mille Lacs County should go ahead there.

The issues on this motion are more in number and greater in complexity than either side has identified. They include one not even acknowledged by either side, the scope of the bankruptcy jurisdiction of the federal courts. That one is near-pivotal on the question of forum, at a level much more basic than the parties' arguments going to convenience.

■ The Trustee never quite articulates one crucial aspect of the way the parties are positioned: though the pleading of the counterclaim was not completely consistent, the best-supported construction of it is that the counterclaim was not the property of the Debtor or his wife, in their individual capacities, before the Debtor filed for bankruptcy. Thus, the direct right to assert the counterclaim, and to recover damages if it proved meritorious, did not pass into the Debtor's bankruptcy estate. *Cf. Fix v. First State Bank of Roscoe,* 559 F.3d 803, 809 (8th Cir.2009); *Whetzal v. Alderson,* 32 F.3d 1302, 1303 (8th Cir.1994); *In re Ozark Rest. Equip. Co.,* 816 F.2d 1222, 1225 (8th Cir.1987) (all holding that causes of action that have accrued in favor of debtor filing for bankruptcy, as of date of filing, pass into bankruptcy estate by operation of 11 U.S.C. § 541(a)). The Debtor's interest as equity shareholder in Kodiak did pass into the bankruptcy estate; but this did not result in the property rights of Kodiak, as a separate legal person, passing directly into

---

5. The Bank does not expressly seek leave to continue the *in personam* action against the Debtor to fix and liquidate his liability on the guaranty. This relief could be encompassed by its more general desire to "[e]xercise any and all rights and remedies available under the Mortgage, the Note, and the Guaranty with respect to the Property ...."

6. 11 U.S.C. § 362(d)(2) provides for a grant of relief from stay,

  (2) with respect to a stay of an act against property under [11 U.S.C. § 362](a) ... if—

(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization ...

7. The unspoken predicate of the Trustee's theory is that any adjudicated liability on the counterclaim would be offset against the Debtor's liability under the guaranty, as to any unsatisfied and past-due debt funding the mortgage that would be a predicate for a foreclosure.

the estate. *In re Brose,* 339 B.R. 708, 713 (Bankr.D.Minn.2006). And, if the Debtor himself did not have a cause of action against Village Bank, the mere fact of his bankruptcy filing does not override the operation of nonbankruptcy law so as to give the Trustee one. *See, in general, Stumpf v. Albracht,* 982 F.2d 275, 277 (8th Cir.1992).

■ Put into the proper context, the "interest" of the bankruptcy estate in the counterclaim is only an attenuated one that does not have legal significance. It is only an inclination to look toward the counterclaim as a vehicle through which the Bank's encumbrance against the Mille Lacs County property—an asset that does repose in the estate—could be reduced in value or defeated entirely, leaving equity in the real estate that the Trustee could recover via subsequent liquidation. This is no more than a reason to be concerned over the counterclaim's fate, in the connotative, layperson's sense of an "interest." It does not rise to a "right, title, or interest" in the sense of direct legal ownership, with all that would entail in immediate control over disposition.

The Trustee might be able to assume control over the counterclaim, and to propel it forward; but she would do so by using the status of successor to the Debtor as controlling equity holder of Kodiak. In the abstract, anyway, she could exercise the power of that constituency in the corporate structure to compel the corporation,

in its own right and under its own name, to resume its role as an active litigant.[8] But this would leave intact the named real party in interest as counterclaimant, Kodiak itself; and the outcome would inure to the corporation and not directly to the Trustee. In no way would such an action, in which the debtor in bankruptcy had not pleaded a cause of action in its own right, fall within the "core proceeding" jurisdiction of the federal courts over bankruptcy-related matters.[9] The enumeration in 28 U.S.C. § 157(b) does not include a claim for damages brought in the name of a corporation of which a debtor in bankruptcy is the sole shareholder. The "catch-all" provisions of 28 U.S.C. §§ 157(b)(2)(A) and (O) could not be defensively construed to encompass it. *See In re Cassidy Land and Cattle Co., Inc.,* 836 F.2d 1130, 1132 (8th Cir.1988) (courts should refrain from expansively construing 28 U.S.C. §§ 157(b)(2)(A) and (O), to avoid exceeding the constitutional limitations identified in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).

■ The Trustee's only other option for jurisdiction would be the argument that the action would fall within the "any conceivable effect" definition for a related proceeding under 28 U.S.C. § 1334(b), as framed in case law. *See Celotex Corp. v. Edwards,* 514 U.S. 300, 307–308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).[10] That would be a real stretch; and given the lack

---

8. These observations assume the stated composition of the equity shareholding in Kodiak. In the text of its motion, the Bank alleges that "Debtor is the sole shareholder of Kodiak." The Trustee has not denied this. But, there is no evidence of record on which to base a finding or conclusion to that effect.

9. The statutory source for "core proceeding" jurisdiction is the grant under 28 U.S.C. § 1334(b), as to "all civil proceedings arising under" the Bankruptcy Code, "or arising in . . . cases under" the Bankruptcy Code. Logi-

cally, most of the functions of bankruptcy that make their way "under" the Code, or "in" a bankruptcy case, are identified in 28 U.S.C. § 157(b), as the matters committed to final decision making by a bankruptcy judge.

10. The theory, of course, would be that the success of the named plaintiff against the Bank could not only reduce the face amount of any claim in favor of the Bank on the Debtor's guarantee that would be allowable in the Debtor's bankruptcy case, it could free up value in the Mille Lacs County real estate

of on-point case law, an assumption of that jurisdiction would be open to challenge on appeal. In any event, a party opposed to the prospect of a bankruptcy judge presiding over the litigation could seek mandatory abstention under 28 U.S.C. § 1334(c)(2) or discretionary abstention under 28 U.S.C. § 1334(c)(1); could raise procedural complications under 28 U.S.C. §§ 157(c)(1)-(2) (limiting bankruptcy judges' ability to exercise final decision-making authority over related proceedings to those where all parties consent); could seek withdrawal of reference under 28 U.S.C. § 157(d); or could assert a right to trial by jury with the complications entailed by 28 U.S.C. § 157(e), FED. R. BANKR.P. 9015, and LOC. R. BANKR.P. (D.Minn.) 5011–3(a). Acceding to the Trustee's theory would buy into all of those potential side issues. None of them go to the merits, and none promise to advance a final resolution of the contest over this property.

This all supports relegating the parties to litigating all claims in the pre-bankruptcy forum where they were originally raised, which unquestionably has jurisdiction. There, the Trustee would have to make of her derivative, shareholding-based interest in the counterclaim as best she could. But once she positioned herself for standing to assert the counterclaim, she could get to the merits without the distraction of complicated side-issues.

■ The Trustee's only significant argument against granting the Bank's motion for relief from stay was the asserted benefit and propriety of pursuing the counterclaim first, and in this Court.[11] With the failure of that theory, there is no reason not to grant the motion now.

■ The foregoing analysis assumed that the counterclaim was solely the property of Kodiak. This was the most defensible conclusion from the state of the entire pleading and in particular from the prayer for relief for the counterclaim.[12]

from the encumbrance of the Bank's mortgage, for recovery by the estate.

11. In her original response, the Trustee argued that the Bank had not made a prima facie case under 11 U.S.C. § 362(d)(2), in that it had not produced evidence that there was no equity in the property as § 362(d)(2)(A) requires. Her argument as to the calculations for an equity determination was hard to follow; it rested on an asserted "negative implication" from certain ambiguous wording in the text of the Bank's motion. The Trustee properly pointed out that the Bank had not identified a specific valuation for the property, and relied on its own, summarily-expressed "information and belief, [that] the Debtor ha[d] no equity in the Property." She was right to point out the inconsistencies of the Bank's references to the amount of underlying debt, given its tacit acknowledgment of the $50,000.00 cap on the Debtor's personal guarantee. But, in a later pre-hearing submission, the Bank produced a recently-generated appraisal report. The author of that document opined that the market value of the property was $18,000.00. Since other portions of the record made out a prima facie

showing for a minimum amount of encumbering debt at $50,000.00, and the basis for a reduction by counterclaim and offset was still conjectural, the Bank satisfied its one burden under 11 U.S.C. § 362(g)(1). The Trustee did not counter the Bank's evidence with a significantly higher valuation-by-appraisal; and the satisfaction of 11 U.S.C. § 362(d)(2) was a non-issue in a Chapter 7 case.

12. The counterclaim opens with the words "[a]s for *its* counterclaim, *Kodiak* states and alleges as follows ..." (emphasis added). The text of the counterclaim repeatedly refers to how "*Kodiak* incurred damages ..." (emphasis added). However, there are some inconsistencies that could support an argument that the Debtor and his wife, in their individual capacities, were asserting a right to damages also. The section for each numbered count opens with the recitation "*Defendants* assert and reallege the paragraphs above ..." (emphasis added). In paragraph 67, at the end of Count III, "Breach of Contract," the counterclaim alleges that "[a]s a result of [the Bank's] breach, *Defendants* were damaged, including otherwise unnecessary attorney fees

But, there is an ambiguity: per the representations of counsel, the Trustee and Village Bank negotiated a resolution to this motion down to a proposed number, as between them, but the settlement process foundered when the Debtor's wife refused to join in that settlement, or at least to release her claims against the Bank. The willingness of the Trustee and the Bank to admit her to a settlement process started by them may only reflect the Bank's wish to foreclose all possible claims from any direction. On the other hand, it could reflect a recognition by both the Bank and the Trustee that the Debtor's wife, who did not join in his bankruptcy filing, was a real party in interest on the counterclaim.

If she was, the corollary was that the Debtor was a real party in interest as well. The concomitant to that would be that the estate directly holds a property right in the counterclaims against the Bank. That, then, could support jurisdiction as a related proceeding, and potentially as a core proceeding.[13]

But if the estate is a counterclaimant in its own right, the status of the Debtor's wife as a joint counterclaimant in the original state court lawsuit militates entirely against assuming bankruptcy jurisdiction over any aspect of the counterclaim. The Debtor's wife is not a petitioner in bankruptcy, so there would be no basis whatsoever for the federal courts to exercise bankruptcy jurisdiction over her counterclaims against the Bank: they would not fall within any of the enumerated categories of core proceedings, and there would be no "conceivable effect" on the administration of the Debtor's bankruptcy estate

from her participation in the lawsuit toward a recovery of her own. The Bank could assert with some justification that she would be an indispensable party to the litigation of the counterclaim. So, the threshold complications are patent. And all of them would hamper a resolution of the competing claims against the real estate in question.

So even under the alternate permutation of parties in interest to the counterclaim, there is no defensible warrant for the Trustee to bring it to this Court. And, again, because the asserted advantages of doing that were the Trustee's only argument against granting relief from stay to the Bank, there is no ground on which to deny the Bank's motion. If the Trustee wishes to pursue the counterclaim, and has standing to do so, she has her forum in the Mille Lacs County District Court.

IT IS THEREFORE ORDERED:

1. Village Bank is granted relief from the automatic stay of 11 U.S.C. § 362(a), such that it may proceed in the action for foreclosure of mortgage presently pending in the Minnesota State District Court for the Seventh Judicial District, Mille Lacs County, under the caption of *Village Bank v. Kodiak Homes, Inc., et al,* Court File No. 48–CV–08–1487, and may pursue its rights and remedies against all real estate encumbered under the mortgage dated June 1, 2007, executed by the Debtor and Sandra K. Carlson, as recorded in the office of the County Recorder for Mille Lacs County, Minnesota, as Document Number 342538, encumbering the real property legally described as:

---

and business expenses . . ." (emphasis added). It is not clear whether the latter pleads a right to general damages in favor of the Debtor and his wife as well as Kodiak, or just a right to recover their own attorney fees.

13. Under 28 U.S.C. § 157(b)(2)(C), "counterclaims by the estate against persons filing

claims against the estate" are core proceedings. It does not appear that Village Bank has yet filed a proof of claim. But upon such a filing, any counterclaim that was property of the estate would qualify under this provision.

LOTS 183, 184, 185, 186 AND 187, SUNSET BAYS, MILLE LACS COUNTY, MINNESOTA, EXCEPT THAT PART TAKEN FOR ROAD AS CONTAINED IN FINAL CERTIFI-CATE FILED AS DOCUMENT NUM-BER 151225.

Village Bank may take any other action to enforce its rights as mortgagee, including foreclosure by advertisement, voluntary foreclosure, or deed in lieu of foreclosure.

2. In pursuing its foreclosure by action, Village Bank shall not enforce any resultant judgment for the recovery of money against the Debtor personally, or against the assets of the Debtor's bankruptcy estate by any means other than filing a proof of claim based upon the liquidated amount of the debt.

3. Notwithstanding the provisions of Fed. R. Bankr.P. 4001(a)(3), this order is effective immediately.