UNITED STATES of America

v.

KASZ ENTERPRISES, INC.,
a corporation and James
Kaszyk, an individual.

Civ. A. No. 93–0455 P.

United States District Court,
D. Rhode Island.

Sept. 26, 1994.

Everett C. Sammartino, Asst. U.S. Atty., Providence, RI, Steven A. Keller, U.S. Dept. of Justice, Washington, DC, Cynthia Stofberg, U.S. Food & Drug Admin., Rockville, MD, for plaintiff.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Pursuant to Fed.R.Civ.P. 59(e), the plaintiff moves to amend a judgment entered by this Court against the defendants, Kasz Enterprises, Inc. and James Kaszyk (collectively "Kasz") on June 24, 1994 wherein a permanent injunction was entered in favor of the plaintiff, enjoining the defendants from distributing their products in violation of the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* 855 F.Supp. 534. The issue here centers on the Court's authority to amend the judgment pursuant to Fed.R.Civ.P. 59(e) or 60(b) and the rule of specificity embodied in Rule 65(d). For reasons which follow, the Court amends the judgment and enters the detailed order hereinafter set forth.

### I.

This case was initiated by a motion for summary judgment pursuant to Fed.R.Civ.P. 56, filed by the plaintiff, seeking to enjoin the defendants from distributing their product. The motion was referred to Magistrate Judge Robert W. Lovegreen. Since 28 U.S.C. § 636(b)(1) clearly does not authorize a Magistrate Judge to enter injunctive orders, he rightfully treated the referral as one for a Report and Recommendation. He found that the defendants' product, a hair solution to be applied to the scalp as a hair

restorer, was a "new drug" under the FDCA and that the defendants were distributing it in interstate commerce without having first obtained the required approval from the U.S. Food and Drug Administration ("FDA"); he further concluded that the defendants were likely to continue to do so unless enjoined by the Court. On May 6, 1994, he recommended that the Court grant the plaintiff injunctive relief. On June 15, 1994, I approved his report by merely stating:

> The Report and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on May 6, 1994 in the above-captioned case is hereby accepted pursuant to 28 U.S.C. § 636(b)(1).

As is obvious, I failed to comply with Fed. R.Civ.P. 65(d); it provides:

> [e]very order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail ... the act or acts sought to be restrained....

## II.

■ The need for specificity in injunctive orders is well settled:

> ... the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.

*Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974).

The Eighth Circuit defined the *Schmidt* language as follows:

> In *Schmidt,* [*supra*], the Supreme Court identified two interests which the rule of specificity serves to advance. It prevents uncertainty on the part of those faced with injunctive orders and gives them explicit notice of what conduct is unlawful. Second, it allows a reviewing court "to know precisely what it is reviewing." *Id.* at 476–77, 94 S.Ct. at 715–716. To these two functions we would also add that a specific injunction allows those who are protected by its terms to know when the order is being violated so that they may then effec-

tively police the order and enforce its mandate.

*Daniels v. Woodbury County, Iowa,* 742 F.2d 1128, 1134 (8th Cir.1984).

No further elaboration is necessary to conclude that the judgment, as it now stands, is entirely inadequate. It does not comport with Fed.R.Civ.P. 65(d).

■ Having thus concluded, the Court's authority to amend an entered judgment must be resolved.

Once a judgment has been entered, it can only be modified or vacated as specified in the Federal Rules of Civil Procedure. The pertinent Rule here is either 59(e) or 60(b).

Rule 59(e) provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." The time for appeal is tolled by the filing of the motion within the requisite time period and courts do not have the power to extend the deadline except to the extent and under the conditions stated in the rule. Fed.R.Civ.P. 6(b).

The judgment was entered on June 24, 1994 and the motion to amend was filed on July 5, 1994. "When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed.R.Civ.P. 6(a). A simple reference to the calendar shows the motion to amend was filed within the prescribed time period.

Even if the movant had exceeded the 10 day deadline, resort could still be had to Rule 60(b). It provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ...; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6)

any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. . . .

*See Pfizer Inc. v. Aceto Corp.,* No. 93 Civ. 7160, 1994 WL 97224 (S.D.N.Y. Mar. 18, 1994) (using broad language of Rule 60(b)(6) to "clarify" a default judgment); *Padco, Inc. v. Newell Companies,* No. 85–C–1325, 1988 WL 187504 (E.D.Wis. Jul. 17, 1988), aff'd 878 F.2d 1445 (Fed.Cir.Wis.1989) (granting a motion to alter or amend some language of a judgment which movants contended was too general and not in conformance with Rule 65(d)); *Kansas Health Care Ass'n v. Kansas Dep't of Social and Rehabilitative Services,* 754 F.Supp. 1502, 1516 (D.Kan.1990), rev'd on other grounds, 958 F.2d 1018 (10th Cir. 1992) (though the court declined to amend in

accordance with Rules 59(e) and 65(d), it stated "[w]hether to open and amend a judgment is a decision committed to the sound discretion of this court."); *U.S. v. Berenguer,* 821 F.2d 19, 21 (1st Cir.1987) (relief under Rule 60(b)(6) is "reserved for extraordinary cases in which the unusual circumstances justify a party's delay"); *Mitchell v. Hobbs,* 951 F.2d 417, 420 (1st Cir.1991) (these motions are "addressed to the sound discretion of the district court").

From the foregoing, I conclude that an amendment of the judgment in this case is authorized and entirely appropriate in order to "prevent uncertainty and confusion" on the part of the defendants and to allow this Court "to know precisely what it is reviewing." *Daniels, supra,* at 1134.

### III.

■ To comply with the rule of specificity, the plaintiff has proposed an order as set forth in the margin hereof.[1] The defendants object.

---

1. "IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

I. The defendants, Kasz Enterprises, Inc., a corporation, and James Kaszyk, an individual, and each and all of their officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons in active concert or participation with them, or any of them, who have received actual notice of this consent decree by personal service or otherwise, are hereby perpetually and permanently restrained and enjoined under the provisions of 21 U.S.C. § 332(a), from directly or indirectly introducing or delivering for introduction into interstate commerce, or causing the introduction or delivery for introduction into interstate commerce of, Solution 109 Herbal Shampoo and Solution 109 Herbal Cosmetic Scalp Cleanser drugs (collectively "Solutions 109"), or similar products that are labeled or promoted as effective for hair growth or hair loss prevention, or any other "new drugs" within the meaning of 21 U.S.C. § 321(p), unless and until there is in effect with respect to such drugs either

1) an approved new drug application pursuant to 21 U.S.C. § 355, or

2) a decision from FDA that an approved new drug application pursuant to 21 U.S.C. § 355 is not required with respect to such drugs.

II. Within fifteen (15) days after the date of entry of this Injunction, the defendants shall do the following:

A) Provide a copy of this Injunction, by personal service or by registered mail, to each and all of their officers, agents, representatives, employees, attorneys, successors, assigns, and any

and all persons in active concert or participation with them, or any of them;

B) Provide the District Director, FDA Boston District Office, One Montvale Avenue, Stoneham, MA 02180, with an affidavit, stating the fact and manner of compliance with Paragraph A above and identifying the names, addresses, and positions of all persons notified under paragraph A above.

III. Duly authorized representatives of FDA are authorized, as they deem necessary, to inspect the defendants' facility, including any new locations, and all equipment, finished and unfinished materials and product, containers, labeling and advertising, and other promotional material, to take photographs, and to examine and copy all records relating to the receipt, processing, packing, labeling, promotion, holding, and distribution of any of the defendants' products to ensure continuing compliance with the terms of this Injunction. Such inspections shall be authorized upon presentation of a copy of this Injunction and appropriate credentials. Such inspection authority granted by this Injunction is apart from, and in addition to, the authority to make inspections under 21 U.S.C. § 374. The cost of such inspections shall be borne by the defendants at a rate of forty-seven dollars ($47.00) per hour or fraction thereof per representative for inspectional work, fifty-six dollars and fifty cents ($56.50) per hour or fraction thereof per representative for laboratory and analytical work, plus traveling and subsistence expenses, if any.

In addition, if the defendants violate this Injunction and are found in civil or criminal con-

The defendants resist the outright prohibition from continued manufacturing·and marketing of Solutions 109 that the. proposed order imposes. Further, they strenuously object to notifying their customers that Solutions 109 have been adjudged to be unapproved new drugs. *See* Defendants' Memorandum in Support of Their Objection to Amend Judgment at 6. They claim that if entered, the order should be modified to enjoin them only from continuing to label or promote Solutions 109 as hair growth drugs. The government argues, and I agree, that the only cure for the violations is to enjoin the manufacturing, selling and distribution of Solutions 109 that are labeled or promoted as effective for hair growth or hair loss prevention, since defendants have created a market associating their products with hair growth.

There is no doubt that a substantial market has been created. ·The defendants have, by their own admission, ·"thousands of customers". Plaintiff's Reply to Defendants' Objection ·to Plaintiff's Motion to Amend Judgment at 5. They have created this market by their extensive promotional activity accentuating, in every way, their *sine qua non* for. buyer demand—the magic ability of Solutions 109 to grow hair. The literature disseminated incorporated opinions and testimonials supposedly obtained from third party users.

"These so-called 'testimonials' from Kasz customers, claiming that Solutions 109 grow hair and prevent hair loss, were incorporated into a package of promotional materials that was supplied to persons inquiring about the products, to hair salons that sold the products, and to.purchasers of the products. The package,included a booklet entitled *KASZ Enterprises, Inc.: solution 109;* a newspaper

---

tempt thereof, the defendants shall, in addition to other remedies, reimburse the plaintiff for its attorney fees, investigational expenses, and court costs relating to such contempt proceedings.

IV. Within fifteen (15) days of the date of entry of this Injunction, of the date of entry of this Injunction, the defendants shall notify, by letter, all customers and all other persons involved in the sale or purchase of the drugs referred to in Paragraph I that, pursuant to an order of this Court, the drugs may no longer be marketed because they are unapproved new drugs and misbranded drugs and that any continued marketing of the drugs is a violation of the FDCA. This letter must be submitted within ten (10) days of the date of entry of this Injunction to FDA Boston District Office and approved in writing by the District Director, prior to its distribution.

V. Within thirty (30) days of the date of entry of this Injunction, the defendants shall provide to the District Director, FDA Boston District Office, and to plaintiff's attorneys, an affidavit setting the fact and manner of their compliance with paragraph IV, and identifying the names, addresses, and positions of all persons notified pursuant to paragraph IV. This affidavit shall include a copy of the letter(s) sent evidencing the defendants' compliance with paragraph IV.

VI. Within forty-five (45) days from the date of entry of this Injunction, the defendants .shall destroy, under FDA supervision, all drugs identified in paragraph I above, unless (a) the drugs have been brought into compliance with the Act in the manner described in that paragraph, and (b) the defendants have received a notice in writing from the District Director, FDA Boston District Office, that the drugs appear to be in compliance with the Act. All costs of the destruction shall be borne by the defendants. The costs of

FDA's supervision of the destruction shall also be borne by the defendants, at the rates specified in paragraph III above.

VII. · The defendants shall notify the District Director, FDA Boston District Office, at least ten (10) days before any reorganization, relocation, dissolution, assignment or sale of the defendants' business, that may affect compliance obligations arising out of this Injunction.

VIII. The defendants shall immediately cease and discontinue manufacturing, packing, labeling, distributing, marketing, promoting, and dispensing any article of drug, as defined by 21 U.S.C. § 321(g), if FDA notifies defendants in writing that such·article is a drug which is a new drug that is not the subject of an effective new drug application. Upon receipt of this letter, defendants shall recall all such unapproved new drugs already distributed.

IX. Any cessation of operations as described above shall continue until receipt by defendants of written notification by FDA that defendants appear to be in compliance with the requirements of the Act.

X. All decisions specified in. this Injunction shall be vested in FDA's discretion and, if necessary, shall be reviewed by this Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A).

XI. This Court retains jurisdiction over this action and parties hereto for the purpose of enforcing and modifying this Injunction and·for the purpose of granting such additional relief as may be hereafter necessary or appropriate.

XII. Except as provided above, the parties shall bear their own costs and attorney's fees in this action."

article reprinted from the Middlesex News entitled *Is this the Solution to hair loss problem?;* and a memorandum entitled *From the Office of the President."* Magistrate's Report and Recommendation at 3.

There is no doubt the public has been educated to associate Kasz Enterprises, Inc. and Solutions 109 with prevention of hair loss and the restoration of lost hair. The simple incorporation of a disclaimer would not negate the sensory impact of the defendants' marketing, selling and packaging practices. The ordinary buyer, unless he or she sets out to detect the disclaimer, would regard the product as hair restorers. Any modification, as defendants suggest, would not obviate the likelihood of continued purchases under the mistaken belief that Solutions 109 would fulfill their advertised promises. Effective advertising creates an attraction for the product which becomes entrenched with the public and is not necessarily negated by a belated disclaimer on its label. The force set in motion cannot be readily dissipated absent complete cessation of sales and recall of the products from its independent distributors. This was virtually conceded by defense counsel in his argument before the Magistrate. In answer to the Magistrate's question, "What about [the plaintiff's comment] that you've already, your client has already established a clientele and by selling the same product you're in effect open to benefit from the belief of these customers that this does restore hair or grows hair?" Defense counsel answered:

"That, of course, may be. I can't read the minds of potential customers. I do believe the people who have been buying it on the theory it does restore hair, if they do exist, I guess they do, they may continue, but that will be subject to normal laws of attrition if you indulge or carry on in business an advertising campaign which these defendants have for some years and you discontinue that entirely, that will disappear, dissipate. It may not dissipate in the time frame that the government would like, but it would practically put the defendants out of business as a shampoo if he's got to redesign his product. And there's no reason why he couldn't use the name Solutions 109 as a legally marketed prod-

uct except for the fact that your report and the court's order indicates it cannot be advertised as a hair growth product.... [W]hile it's true there may be some residual feeling by potential customers, I don't think that's a matter of moment and I don't think it should be the subject matter of any order."

Tr., 8/11/94 at 15–16.

The defendants' own argument proves the point—the consequences of the past promotional activities of the defendants will linger for an unknown period of time into the future. As the plaintiff argues, during this period the defendants, if not appropriately enjoined, will profit from their past illegal activity.

A defendant cannot be permitted to reap a profit from his fraudulent conduct; to excuse such behavior as benign residual fraud makes no sense. *United States v. Ellis Research Laboratories,* 300 F.2d 550, 554 (7th Cir.1962), *cert. denied,* 370 U.S. 918, 82 S.Ct. 1558, 8 L.Ed.2d 499 (1962). This is especially so if the name and visual impact of the product is perpetuated—who can say when, if ever, the residual would dissipate? If the defendants wish to continue marketing Solutions 109, they must do so legally by first obtaining premarket approval from FDA pursuant to 21 U.S.C. § 355 or a decision from FDA that premarket approval is unnecessary.

What has been stated sets forth the necessary guiding concepts for an effective injunctive order to which the plaintiff is entitled.

## IV.

I accept the plaintiff's proposed order except for the following portions which I have deleted:

Paragraph III: It seems to me this paragraph is much too broad. It authorizes arbitrary inspection of defendants' facilities, whatever they may be manufacturing— whether it be hair products or legitimate articles entirely alien to the scalp in their use. Furthermore, the cost provisions are summarily set by the plaintiff; unless agreed

upon, this is a matter for court determination.

Paragraph VIII: The Court's inserted sentence to the proposed paragraph affords the defendants an opportunity to challenge FDA's findings.

Paragraph X: This paragraph is unnecessary; the Court's authority and standard of review is a matter of law.

*Conclusion*

It is hereby ORDERED, ADJUDGED, AND DECREED that:

I. The defendants, Kasz Enterprises, Inc., a corporation, and James Kaszyk, an individual, and each and all of their officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons in active concert or participation with them, or any of them, who have received actual notice of this consent decree by personal service or otherwise, are hereby perpetually and permanently restrained and enjoined under the provisions of 21 U.S.C. § 332(a), from directly or indirectly introducing or delivering for introduction into interstate commerce, or causing the introduction or delivery for introduction into interstate commerce of, Solution 109 Herbal Shampoo and Solution 109 Herbal Cosmetic Scalp Cleanser drugs (collectively "Solutions 109"), or similar products that are labeled or promoted as effective for hair growth or hair loss prevention, or any other "new drugs" within the meaning of 21 U.S.C. § 321(p), unless and until there is in effect with respect to such drugs either:

1) an approved new drug application pursuant to 21 U.S.C. § 355, or

2) a decision from FDA that an approved new drug application pursuant to 21 U.S.C. § 355 is not required with respect to such drugs.

II. The defendants are hereby perpetually and permanently restrained and enjoined from directly or indirectly introducing or delivering for introduction into interstate commerce, or causing the introduction or delivery for introduction into interstate commerce any product that uses the Solution 109 logo. The defendants are further restrained from utilizing the color and shape of the Solution 109 bottle, bottle label, and bottle packaging, and the graphic design of the bottle, bottle label, and bottle packaging on any subsequent hair or scalp treatment products which they might produce.

III. Within fifteen (15) days after the date of entry of this Injunction, the defendants shall do the following:

A) Provide a copy of this Injunction, by personal service or by registered mail, to each and all of their officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with them, or any of them;

B) Provide the District Director, FDA Boston District Office, One Montvale Avenue, Stoneham, MA 02180, with an affidavit, stating the fact and manner of compliance with Paragraph A above and identifying the names, addresses, and positions of all persons notified under paragraph A above.

IV. Within fifteen (15) days of the date of entry of this Injunction, the defendants shall notify, by letter, all customers and all other persons involved in the sale or purchase of the drugs referred to in Paragraph I that, pursuant to an order of this Court, the drugs may no longer be marketed because they are unapproved new drugs and misbranded drugs and that any continued marketing of the drugs is a violation of the FDCA. This letter must be submitted within ten (10) days of the date of entry of this Injunction to FDA Boston District Office and approved in writing by the District Director, prior to its distribution.

V. Within thirty (30) days of the date of entry of this Injunction, the defendants shall provide to the District Director, FDA Boston District Office, and to plaintiff's attorneys, an affidavit stating the fact and manner of their compliance with paragraph III, and identifying the names, addresses, and positions of all persons notified pursuant to paragraph III. This affidavit shall include a copy of the letter(s) sent evidencing the defendants' compliance with paragraph III.

VI. Within forty-five (45) days from the date of entry of this Injunction, the defen-

**724**

dants shall destroy, under FDA supervision, all drugs identified in paragraph I above, unless (a) the drugs have been brought into compliance with the Act in the manner described in that paragraph, and (b) the defendants have received a notice in writing from the District Director, FDA Boston District Office, that the drugs appear to be in compliance with the Act.

VII. The defendants shall notify the District Director, FDA Boston District Office, at least ten (10) days before any reorganization, relocation, dissolution, assignment or sale of the defendants' business, that may affect compliance obligations arising out of this Injunction.

VIII. The defendants shall immediately cease and discontinue manufacturing, packing, labeling, distributing, marketing, promoting, and dispensing any article of drug, as defined by 21 U.S.C. § 321(g), if FDA notifies defendants in writing that such article is a drug which is a new drug that is not the subject of an effective new drug application. Upon receipt of this letter, defendants shall recall all such unapproved new drugs already distributed. Within 24 hours of receipt of said notice, there is reserved to the defendants the right to seek relief from a court of competent jurisdiction before compliance as specified.

IX. Any cessation of operations as described above shall continue until receipt by defendants of written notification by FDA that defendants appear to be in compliance with the requirements of the Act.

X. This Court retains jurisdiction over this action and parties hereto for the purpose of enforcing and modifying this Injunction and for the purpose of granting such additional relief as may be hereafter necessary or appropriate.

XI. The parties shall bear their own costs and attorney's fees in this action.

SO ORDERED: