# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-3433

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

APEX OIL COMPANY, INC.,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05-242-DRH—**David R. Herndon**, *Chief Judge*.

ARGUED MAY 11, 2009—DECIDED AUGUST 25, 2009

Before CUDAHY, POSNER, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. Apex Oil Company appeals from the grant of an injunction, at the behest of the Environmental Protection Agency and on the authority of 42 U.S.C. § 6973 (a part of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901 *et seq*.), that requires Apex to clean up a contaminated site in Hartford, Illinois. In a 178-page opinion following a 17-day bench trial, the district judge made findings that millions of

gallons of oil, composing a "hydrocarbon plume" trapped not far underground, are contaminating groundwater and emitting fumes that rise to the surface and enter houses in Hartford and in both respects are creating hazards to health and the environment. The judge deemed it Apex's legal responsibility to abate this nuisance because the plume was created by an oil refinery owned by a corporate predecessor of Apex. Apex challenges these findings and conclusion, but the challenge has no possible merit.

The principal question presented by the appeal is unrelated to the district judge's findings and conclusions; it is whether the government's claim to an injunction was discharged in bankruptcy and therefore cannot be renewed in a subsequent lawsuit—this suit. The bankruptcy judge's confirmation (approval) of a claim in a Chapter 11 proceeding discharges the debtor from "any debt that arose before the date of" confirmation, 11 U.S.C. § 1141(d)(1)(A), with immaterial exceptions. "Debt" is defined as "liability on a claim," § 101(12), and "claim" as either a "right to payment," § 101(5)(A), or—the critical language in this case—a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." § 101(5)(B). The critical question is the meaning of "gives rise to a right to payment."

Because Apex no longer does refining and as a result has no in-house capability of cleaning up a contaminated

site, it would have to hire another company to do the clean up in order to comply with the injunction. It estimates that it would have to pay such a company $150 million for the job, though it might be able to recover some of the expense from other contributors to the contamination.

The natural reading of the statutory provision that we quoted is that if the holder of an equitable claim can, in the event that the equitable remedy turns out to be unobtainable, obtain a money judgment instead, the claim is dischargeable. If for example you have a decree of specific performance (a type of injunction and therefore an equitable remedy) that you can't enforce because the property that the decree ordered the defendant to sell you was sold to someone else (from whom, for whatever reason, you cannot recover it), you are entitled to a money judgment for the value of the property, e.g., *UFG, LLC v. Southwest Corp.*, 848 N.E.2d 353, 363, 365 (Ind. App. 2006); *Vinson v. Marton & Associates*, 764 P.2d 736, 739-40 (Ariz. App. 1988); *Engasser v. Jones*, 198 P.2d 546, 549 (Cal. App. 1948)—and your claim to that value is a claim to a right to receive payment and is dischargeable in the seller's bankruptcy. *In re Davis*, 3 F.3d 113, 116 (5th Cir. 1993); *In re Irizarry*, 171 B.R. 874, 878-79 (9th Cir. BAP 1994).

In addition, some equitable remedies, such as backpay orders in employment cases, *Doe v. Oberweis Dairy*, 456 F.3d 704, 714 (7th Cir. 2006); *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500-01 (7th Cir. 2000); *Broadnax v. City of New Haven*, 415 F.3d 265, 271 and n. 1 (2d Cir.

2005), and orders of equitable restitution, 1 Dan B. Dobbs, *Law of Remedies* § 4.3 (2d ed. 1993), are orders to pay, and so would be dischargeable were it not for specific exceptions in the Bankruptcy Code. See, e.g., *Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582, 586-87 (7th Cir. 2005); *Bush v. Taylor*, 912 F.2d 989, 992-93 (8th Cir. 1990) (en banc). That equitable remedies are always orders to act or not to act, rather than to pay, is a myth; equity often orders payment. *Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 576-77 (7th Cir. 2004); *Clair v. Harris Trust & Savings Bank*, 190 F.3d 495, 498-99 (7th Cir. 1999); John H. Langbein, "What ERISA Means by 'Equitable,'" 103 *Colum. L. Rev.* 1317, 1350-51 (2003).

But the Resource Conservation and Recovery Act, which is the basis of the government's equitable claim, does not entitle a plaintiff to demand, in lieu of action by the defendant that may include the hiring of another firm to perform a clean up ordered by the court, payment of clean-up costs. It does not authorize *any* form of monetary relief. 42 U.S.C. § 6973(a). The Act's companion provision authorizing private suits, 42 U.S.C. § 6972(a)(2), has been held not to authorize monetary relief, *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483-87 (1996); *Avondale Federal Savings Bank v. Amoco Oil Co.*, 170 F.3d 692, 694-95 (7th Cir. 1999); *AM Int'l, Inc. v. Datacard Corp.*, 106 F.3d 1342, 1348 (7th Cir. 1997); *Abreu v. United States*, 468 F.3d 20, 31 (1st Cir. 2006); *South Carolina Dep't of Health & Environmental Control v. Commerce & Industrial Ins. Co.*, 372 F.3d 245, 256 (4th Cir. 2004), and the relevant language of the two provisions is identical.

Thus the government's equitable claim, if well founded, as the district court ruled it to be, entitles the government only to require the defendant to clean up the contaminated site at the defendant's expense. Earlier cases, such as *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 749-50 (8th Cir. 1986), and *United States v. Conservation Chemical Co.*, 619 F. Supp. 162, 201 (W.D. Mo. 1985), which allowed an award of clean-up costs on the basis of general equitable principles set forth in such cases as *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 291-92 (1960), and *Porter v. Warner Holding Co.*, 328 U.S. 395, 397-98 (1946), are dead after *Meghrig*, if we are correct in thinking that the identical language in sections 6972(a)(2) and 6973(a) requires an identical conclusion with regard to a plaintiff's right to seek a money judgment.

That leaves Apex to argue that the cost of complying with an equitable decree should be deemed a money claim, and hence dischargeable. We rejected that proposition, which does not comport with the language of the Bankruptcy Code—the cost to Apex is not a "right [of the plaintiff] to payment"—in *AM Int'l, Inc. v. Datacard Corp.*, *supra*, 106 F.3d at 1348; see also *In re CMC Heartland Partners*, 966 F.2d 1143, 1145-47 (7th Cir. 1992); *In re Torwico Electronics, Inc.*, 8 F.3d 146, 150 (3d Cir. 1993); *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1186-87 (5th Cir. 1986); *Penn Terra, Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 278-79 (3d Cir. 1984); *United States v. Hubler*, 117 B.R. 160, 164 and n. 1 (W.D. Pa. 1990); *In re Chateaugay Corp.*, 112 B.R. 513, 523-24 (S.D.N.Y. 1990), affirmed, 944 F.2d 997 (2d Cir. 1991).

Almost every equitable decree imposes a cost on the defendant, whether the decree requires him to do something, as in this case, or, as is more common, to refrain from doing something. The logic of Apex's position is thus that every equitable claim is dischargeable in bankruptcy unless there is a specific exception in the Code. That is inconsistent with the Code's creation in 11 U.S.C. § 101(5)(B) of only a limited right to the discharge of equitable claims. And if "any order requiring the debtor to expend money creates a dischargeable claim, it is unlikely that the state could effectively enforce its laws: virtually all enforcement actions impose some cost on the violator." *In re Torwico Electronics, Inc., supra*, 8 F.3d at 150 n. 4.

It is true that in *Ohio v. Kovacs*, 469 U.S. 274 (1985), the Supreme Court allowed the discharge in bankruptcy of an equitable obligation to clean up a contaminated site owned by the debtor. An injunction ordering the clean up had been issued before the bankruptcy. The debtor had failed to comply with the injunction and a receiver had been appointed to take possession of his assets and obtain from them the money needed to pay for the clean up. The receiver thus was seeking money rather than an order that the debtor clean up the contaminated site. That was a claim to a "right to payment." The plaintiff in our case (the government) is not seeking a payment of money and the injunction that it has obtained does not entitle it to payment. See *In re Udell*, 18 F.3d 403, 409-10 (7th Cir. 1994); *In re Torwico Electronics, Inc., supra*, 8 F.3d at 150; *In re Chateaugay Corp.*, 944 F.2d 997, 1008 (2d Cir. 1991).

Apex cites *Johnson v. Home State Bank*, 501 U.S. 78 (1991), which held that a mortgage, which is an equitable interest, can be discharged in a Chapter 13 bankruptcy. A mortgage secures a loan, and thus entitles the lender to force the sale of the mortgaged property (the collateral for the loan) in the event the borrower defaults, and to collect the unpaid portion of the debt from the proceeds. That is a straightforward case of an equitable claim that gives rise to a right of payment to the claimant—namely, as in *Kovacs*, the right to payment of his debt out of the proceeds of a sale of property pursuant to a decree (the equitable remedy) that the property be sold.

One appellate case, factually similar to the present one, *United States v. Whizco, Inc.*, 841 F.2d 147, 150-51 (6th Cir. 1988), does support Apex. But it cannot be squared with the decisions which hold that cost incurred is not equivalent to "right to payment," and it sets forth no limiting principle that would distinguish cases under the Resource Conservation and Recovery Act from other cases in which compliance with an equitable decree requires expenditures by the defendant. The distinctions that Apex suggests to limit the scope of a position that it realizes is untenable (that *all* equitable claims are dischargeable in bankruptcy in the absence of a specific exception in the Code)—between injunctions to do and injunctions not to do, between injunctions that require major expenditures and those that require minor ones, between injunctions that the defendant can comply with internally and injunctions that it has to hire an independent contractor in order to achieve compliance—are arbitrary.

The root arbitrariness of Apex's position is that whether a polluter can clean up his pollution himself or has to hire someone to do it has no relevance to the policy of either the Bankruptcy Code or the Resource Conservation and Recovery Act. If adopted by the courts, Apex's position would discourage polluters from developing an internal capability of cleaning up their pollution, even if hiring third parties to do it would be more expensive. Moreover, the cost of cleaning up pollution when the polluter does the cleaning up himself is as real a cost as the price paid to an outsider to clean it up. Why distinguish a check written to an employee from a check written to an independent contractor?

The sparsity of case law dealing with the discharge of claims such as Apex's, together with the near consensus of the cases, cited above, in which the issue has arisen, suggests a general understanding that discharge must indeed be limited to cases in which the claim gives rise to a right to payment because the equitable decree cannot be executed, rather than merely imposing a cost on the defendant, as virtually all equitable decrees do.

Apex argues that to deny discharge in a case such as this disserves the government's long-term interest in environmental quality by precluding, as a practical matter, reorganization in bankruptcy. (The argument derives from Douglas G. Baird and Thomas H. Jackson, "*Kovacs* and Toxic Wastes in Bankruptcy," 36 *Stan. L. Rev.* 1199, 1202-03 (1984).) It says that had it known in 1986 when it declared bankruptcy that it might be liable for

$150 million in clean-up costs, it would have had to liquidate—it could not have reorganized with such a huge debt overhanging it—and had it liquidated there would be no surviving or successor entity to conduct or pay for the clean up and so the full expense would fall on the government. But that is just to say that in some cases the government might benefit from the rule that Apex advocates; in others not and apparently the government believes, at present anyway—for it has taken the Baird-Jackson position in the past, see *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989); *United States v. Apex Oil Co.*, 438 F. Supp. 2d 948, 953 n. 6 (S.D. Ill. 2006); Office of Enforcement and Compliance Assurance, United States Environmental Protective Agency, "Guidance on the Use of Section 7003 of RCRA" pp. 22-23 (Oct. 1997), www.epa.gov/compliance/resources/policies/cleanup/rcra/971020.pdf (visited Aug. 11, 2009)—that it is better off on balance if the cost of clean up is not dischargeable.

Apex makes the unrelated argument that the injunction is vague (it is) and that Rule 65(d) of the civil rules requires (and it does) that an injunction "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." We have insisted on strict compliance with these requirements. *Nuxoll ex rel. Nuxoll v. Indian Prairie School Dist. #204*, 523 F.3d 668, 675 (7th Cir. 2008); *Chicago Board of Education v. Substance, Inc.*, 354 F.3d 624, 631-32 (7th Cir. 2003); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 543 (7th Cir. 1998); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d

1126, 1132 (9th Cir. 2006); *Corning Inc. v. PicVue Electronics, Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (per curiam). The rule applies equally to a mandatory injunction ("acts required")—an injunction that, as in this case, commands that acts be done rather than not done, rather than the more common negative injunction. *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74-76 (1967); *Petrello v. White*, 533 F.3d 110, 115-16 (2d Cir. 2008); *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996); 13 *Moore's Federal Practice* § 65.60[3] (3d ed. 2009). Yet the injunction contains such vague requirements as that Apex have a vapor-control system that has "adequate capacities and efficiencies" and that "all work required by this injunctive order shall be subject to U.S. EPA oversight and approval," which is not so much vague as open-ended because it specifies no criteria for the EPA's approval of efforts by Apex to comply with the decree.

But Apex has no suggestions for rewriting the injunction to make it less vague or open-ended. The clean up of the contaminated site is a huge project—Apex says it will take 15 years to complete (though maybe it's just trying to frighten us, or to push the costs as far into the future as it can). To specify the details of the project in the decree would either impose impossible rigidity on the performance of the clean up or, more likely, require constant recourse to the district judge for interpretation or modification of the decree.

The decree resembles one of those "regulatory decrees" that federal courts issue when they take over the

running of a school system or other complex public institution that has failed to comply with federal law in one respect or another. E.g., *Freeman v. Pitts*, 503 U.S. 467, 489-90 (1992); *Gautreaux v. Chicago Housing Authority*, 475 F.3d 845, 852 (7th Cir. 2007); *Alliance to End Repression v. City of Chicago*, 237 F.3d 799, 799-800 (7th Cir. 2001); *Glover v. Johnson*, 138 F.3d 229, 232-33 (6th Cir. 1998). These decrees, on the interpretation of Rule 65(d) advanced by Apex, do not comply with the rule.

The aims of Rule 65(d) are to minimize the occasion for follow-on proceedings to the issuance of an injunction and to protect defendants from being held in contempt for failure to follow a directive that was a trap because of its ambiguity. *Schmidt v. Lessard*, 414 U.S. 473, 476-77 (1974); *Dupuy v. Samuels*, 465 F.3d 757, 759-60 (7th Cir. 2006); *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 459 (4th Cir. 2000); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2955, pp. 308-09 (2d ed. 1995). But the cases that insist on strict compliance with an inflexible interpretation of the rule must be understood as ones in which such compliance is feasible and desirable. A degree of ambiguity is unavoidable in a decree ordering a complicated environmental clean up. "[T]he Rule does not require the impossible. There is a limit to what words can convey." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431 (7th. Cir. 1985). The defendant can always seek clarification or modification of the decree from the district court, *id*. at 1432, and is protected because if the decree remains ambiguous after efforts at clarification, or after being modified, the defendant cannot be held in contempt for violating it. Cf.

*D. Patrick, Inc. v. Ford Motor Co.* 8 F.3d 455, 460-61 (7th Cir. 1993); *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990); *Inmates of Allegheny County Jail v. Wecht*, 754 F.2d 120, 129 (3d Cir. 1985).

Any disputes over whether the vapor-control system that Apex installs has "adequate capacities" will be submitted to the EPA, as in *United States v. Conservation Chemical Co.*, 628 F. Supp. 391, 410-11 (W.D. Mo. 1985); see also *United States v. Kasz Enterprises, Inc.*, 862 F. Supp. 717, 723-24 (D.R.I. 1994); *Cunningham v. English*, 175 F. Supp. 764, 767-68 (D.D.C. 1958), and a party dissatisfied with the agency's resolution will be able to seek redress from the district court, the ultimate arbiter (subject to appellate review) of the decree's meaning. See *United States v. Northlake*, 942 F.2d 1164, 1167-68 (7th Cir. 1991); cf. *Local 28 of Sheet Metal Workers' International Ass'n v. EEOC*, 478 U.S. 421, 481-82 (1986). There is no improper delegation to the EPA (compare *United States v. Microsoft Corp.*, 147 F.3d 935, 955 (D.C. Cir. 1998)), because its exercise of "oversight and approval" will be subject to the court's override.

AFFIRMED.