# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3242
_____

In re: Peabody Energy Corporation

*Debtor*

------------------------------

County of San Mateo, California; City of Imperial Beach, California; County of Marin, California

*Appellants*

v.

Peabody Energy Corporation

*Appellee*

Office of U.S. Trustee

*U.S. Trustee*

_____

No. 19-1767
_____

In re: Peabody Energy Corporation

*Debtor*

------------------------------

County of San Mateo, California; City of Imperial Beach, California; County of Marin, California

*Appellants*

*v.*

Peabody Energy Corporation

*Appellee*

Office of U.S. Trustee

*U.S. Trustee*

————————

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: March 10, 2020
Filed: May 6, 2020

————————

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.

————————

ARNOLD, Circuit Judge.

In April 2016, Peabody Energy Corporation filed for Chapter 11 bankruptcy. As part of the court-approved plan governing Peabody's reorganization, governmental entities with claims against Peabody had to file proof of their claims with the

-2-

bankruptcy court[1] by a certain date or the claims were barred. After that date came and went, Peabody emerged as a reorganized company.

A few months after Peabody was reorganized, three California municipalities (San Mateo County, Marin County, and the City of Imperial Beach) sued Peabody and more than thirty other energy companies for their alleged contributions to global warming. Each of these municipalities filed a separate though nearly identical lawsuit, all in California state courts, raising claims of strict liability and negligence for failing to warn, strict liability for a design defect, negligence, trespass, and private nuisance. They also brought two public-nuisance claims, one on behalf of the people of California seeking abatement of the nuisance, and the other on their own behalf seeking, among other things, damages and disgorgement of profits. Peabody returned to the bankruptcy court and asked that it enjoin the municipalities from pursuing their claims against it and require them to dismiss their claims with prejudice on the ground that the court-approved reorganization plan had discharged them.

The bankruptcy court agreed. It began with a review of the municipalities' complaints, explaining that they focused on acts occurring from 1965 to 2015. The court noted, moreover, that the complaints mentioned Peabody sparingly, and, when they did, they alleged that Peabody had exported coal from California, continued to export coal from California, participated in "a national climate change science denial campaign" in 1991, and was linked to groups seeking to undermine the connection between the companies' fossil fuel products and climate change. The bankruptcy court determined that the municipalities' claims, which involved Peabody's pre-bankruptcy conduct save for the anodyne allegation that Peabody continues to export coal from California, were all discharged during Peabody's bankruptcy proceedings, and so it enjoined the municipalities from pursuing their claims against Peabody. The

---

[1]The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

-3-

municipalities appealed the bankruptcy court's decision to the district court,[2] which affirmed. *See* 28 U.S.C. § 158(a)(1).

The municipalities now appeal to our court. When a bankruptcy court's decision is appealed to the district court, that court acts as an appellate court by reviewing legal determinations de novo and factual findings for clear error. *See Fix v. First State Bank of Roscoe*, 559 F.3d 803, 808 (8th Cir. 2009). When the case comes to us, "[a]s the second court of appellate review, we conduct an independent review of the bankruptcy court's judgment applying the same standards of review as the district court." *Id.*

Confirmation of a Chapter 11 reorganization plan discharges claims "[e]xcept as otherwise provided . . . in the plan," *see* 11 U.S.C. § 1141(d)(1), and the municipalities contend that there are two provisions in the plan that exempt all their claims from discharge. Importantly, since a confirmed Chapter 11 plan is an order of the bankruptcy court, we review the bankruptcy court's interpretation of a confirmed plan for an abuse of discretion. *See In re Dial Bus. Forms, Inc.*, 341 F.3d 738, 744 (8th Cir. 2003).

As relevant, the first provision that the municipalities rely on exempts from discharge governmental claims brought "under any applicable Environmental Law to which any Reorganized Debtor is subject," but the bankruptcy court held that the municipalities' claims were not made under "Environmental Law" as the plan contemplates that phrase and so this carveout did not save the municipalities' claims from discharge. The plan defined Environmental Law as "all federal, state and local statutes, regulations and ordinances concerning pollution or protection of the environment, or environmental impacts on human health and safety, including [ten

---

[2]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

federal statutes] and any state or local equivalents of the foregoing." A sample of the federal statutes listed includes the Atomic Energy Act; the Clean Air Act; the Comprehensive Environmental Response, Compensation, and Liability Act; and the Federal Insecticide, Fungicide, and Rodenticide Act.

The municipalities argue that their common-law claims against Peabody are "state or local equivalents" of "statutes, regulations and ordinances concerning pollution" and so forth because the municipalities raised these claims to protect the environment. But as the bankruptcy court explained, when the definition of Environmental Law mentioned "state or local equivalent[s]," it was talking about equivalents to the ten federal statutes listed, not equivalents to "statutes, regulations and ordinances concerning pollution." We think this is a reasonable conclusion because we doubt the drafters of the definition would feel the need to clarify that the equivalents could be state or local when the part of the definition dealing with pollution already explicitly said that state and local laws could qualify. In other words, under the municipalities' reading, the second mention of "state" and "local" would be superfluous, and so we don't see how that reading could comport with the parties' intentions. And the municipalities have not demonstrated that their common-law claims are equivalent to the listed federal statutes.

We also think that if the drafters of this carveout had meant for it to include common-law claims they would have explicitly said so, or at a minimum would not have specifically limited Environmental Law to "statutes, regulations and ordinances." The bankruptcy court's interpretation is at least a reasonable one, and so we cannot say that the bankruptcy court abused its discretion in concluding that the municipalities' common-law claims did not fall within the plan's definition of Environmental Law.

The municipalities' nuisance claims are a closer call because they rely on specific California statutes, bringing them at least arguably more in line with the

plan's definition of Environmental Law. But unlike the federal statutes listed, nuisance claims have their roots in the common law and are often referred to as common-law claims, including in Missouri—the jurisdiction that Peabody calls home—whose laws may well have been the focus of the parties who drafted the carveout. *See Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 926–27 (8th Cir. 2015). So we are not convinced that the incidental tethering of the nuisance claims here to statutes in a jurisdiction far from where Peabody's bankruptcy proceedings occurred was the kind of claim the drafters intended to carve out. And as the bankruptcy court noted, the federal statutes listed are designed to remedy particular environmental problems. In contrast, nuisance law, while it may be used to resolve an environmental problem, does not focus on particular environmental problems. In fact, a nuisance can be something with no effect whatsoever on the environment—like something "indecent or offensive to the senses" or the sale of illegal drugs. *See* Cal. Civ. Code § 3479. We understand the force of the municipalities' argument that their particular nuisance claims do focus on the environment, no matter what other nuisance claims might involve. But we cannot say that the bankruptcy court abused its discretion in pointing out the broader potential scope of a California nuisance claim, especially when we consider that if the drafters of the carveout had wanted to include claims of a fundamentally broader nature than the ten statutes listed, they would have said so.

The municipalities emphasize that the plan, in a separate provision governing its interpretation, explained that when the plan used the word "including," it meant "including without limitation," and so the municipalities urge us not to dwell exclusively on the list of federal statutes in interpreting the carveout. But that list shows the kinds of laws on the minds of the parties who wrote the carveout, and we understand the bankruptcy court's skepticism that more far-reaching claims were also carved out. We think that "including without limitation" could reasonably mean that there might be more environmental statutes of a similar scope that could be considered Environmental Laws, not that any claim with a potential environmental

reach is carved out. If any claim with a potential environmental reach were included, then why would the drafters include the list in the first place? Or why would they not add to the list statutes that are not so obviously Environmental Laws? Although the municipalities advance a reasonable interpretation of the plan, their interpretation is not without its faults, and so the bankruptcy court's interpretation, which we also believe is reasonable and is entitled to deference, does not amount to an abuse of discretion.

A relevant portion of the second provision that the municipalities rely on for the survival of their claims exempts from discharge a governmental claim brought "under any . . . applicable police or regulatory law." The bankruptcy court held that the claims here were not brought under a police or regulatory law, drawing from a section of the bankruptcy code, *see* 11 U.S.C. § 362(b)(4), that excepts a government's attempt to enforce its "police and regulatory power" from the automatic stay that results from the filing of a bankruptcy petition. The bankruptcy court pointed out that our court has held, in construing that provision, that when the government's actions "would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate," then the government is not exercising its police or regulatory power. It is acting as a creditor. *See In re Commonwealth Cos.*, 913 F.2d 518, 523 (8th Cir. 1990). Applying this so-called pecuniary-interest rule, the bankruptcy court concluded that if the municipalities' claims were successful, they would obtain a pecuniary advantage over other creditors because they were seeking damages and disgorgement of fifty-years-worth of profits and so they were not seeking to enforce its police or regulatory power.

The municipalities maintain on appeal that we should not review this aspect of the bankruptcy court's decision for an abuse of discretion because in this instance the court was interpreting a provision of the bankruptcy code, which raises a question of law that we would review de novo. *See In re Archdiocese of Saint Paul & Minneapolis*, 888 F.3d 944, 950 (8th Cir. 2018). We disagree. It is apparent to us that

the bankruptcy court here was simply construing the terms of the plan, and, as it explained, thought that § 362 provided a helpful guide in that effort. We therefore think what we have before us is a question about the meaning of the plan, not the bankruptcy code, and so we review the bankruptcy court's holding for an abuse of discretion.

We see no abuse of discretion in the bankruptcy court's decision to draw on § 362, along with our court's interpretation of it, in determining the meaning of the plan. To the extent the municipalities are objecting to the way the bankruptcy court applied the pecuniary-purpose rule, we reject their contention. If the municipalities forced Peabody to disgorge its profits and recovered the damages they sought, they would diminish the value of the other creditors' ownership stakes in the reorganized Peabody, redistributing the bankruptcy estate without ever having themselves participated in the bankruptcy proceedings.

In addition, the municipalities seek money as the victims of alleged torts, not because they are exercising regulatory or police authority over Peabody, which, according to the complaints, is an out-of-state company acting outside of the municipalities' borders. So for this independent reason, the second carveout does not salvage the municipalities' claims.

The municipalities also assert that, even if the plans did not exempt all their claims from discharge, Peabody's bankruptcy did not discharge their representative public-nuisance claim. Before addressing this argument, a brief survey of the relevant bankruptcy law is in order. Confirmation of a Chapter 11 plan for reorganization "discharges the debtor from any debt that arose before the date of such confirmation," regardless of whether "proof of the claim based on such debt is filed" with the bankruptcy court. 11 U.S.C. § 1141(d)(1)(A). A debt, meanwhile, is simply a "liability on a claim." *Id.* § 101(12). A claim, in turn, is a "right to payment" or, as more relevant here, a "right to an equitable remedy for breach of performance if such

breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." *Id.* § 101(5). The Supreme Court has noted that, by defining "claim" as it did, Congress intended to adopt the "broadest available definition" of the term. *See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). Our court has said that Congress intended "claim" to include "virtually all obligations to pay money." *See In re Flight Transp. Corp. Sec. Litig.*, 874 F.2d 576, 583 (8th Cir. 1989).

The municipalities contend that the public-nuisance claim they assert on behalf of the people of California is not a claim under bankruptcy law because California law does not permit them to recover damages under that theory; they can obtain only an equitable decree ordering Peabody to abate the nuisance. As a result, the argument goes, they do not have a "right to payment" or an equitable remedy that "gives rise to a right to payment," so Peabody's bankruptcy does not affect this claim in their complaint.

The difficulty with this argument is that, even though California law limits the recovery on this claim to equitable relief, that relief can include obligations to pay money. As one of the cases that the municipalities rely on most heavily explains, it is a "myth" that "equitable remedies are always orders to act or not to act, rather than to pay," as "equity often orders payment[s]" that can be discharged in bankruptcy. *See United States v. Apex Oil Co.*, 579 F.3d 734, 736 (7th Cir. 2009). In California, a party who commits a public nuisance can be ordered to pay into a fund, overseen by a receiver, to remedy or eliminate the hazard complained of rather than being ordered to clean up the nuisance themselves. *See, e.g.*, *People v. ConAgra Grocery Prods. Co.*, 227 Cal. Rptr. 3d 499, 569–70 (Cal. Ct. App. 2017). It does not matter that the municipalities do not request that Peabody be ordered to pay into an abatement fund. That a California court could order them is sufficient to make the claim dischargeable, *see In re Torwico Elecs., Inc.*, 8 F.3d 146, 150 (3d Cir. 1993); *In re*

*Chateaugay Corp.*, 944 F.2d 997, 1008 (2d Cir. 1991), because that order would convert the requirement to abate a nuisance into an "obligation[] to pay money." This case is therefore unlike other cases that the municipalities point to where the relevant equitable remedy was not convertible into a monetary obligation. *See, e.g.*, *Apex Oil*, 579 F.3d at 736; *Torwico*, 8 F.3d at 150.

The municipalities point out that they would not receive the proceeds that a court directs to be paid into an abatement fund; that money, unlike damages, would go to a receiver. That is true enough, but we don't see why it makes a difference. As already noted, we have broadly stated that a "claim" includes "virtually all obligations to pay money," *see Flight Transp.*, 874 F.2d at 583, without regard to who receives the payment. The Supreme Court, moreover, in holding that obligations to pay for environmental cleanup are subject to discharge, paid little attention to the fact that those payments would go to a receiver, apparently assuming that did not disqualify the right to payments from being a "claim." *See Ohio v. Kovacs*, 469 U.S. 274, 283 (1985). Besides, even if the municipalities cannot deposit abatement-fund payments into their general treasuries, it is the municipalities and their people who stand to benefit from them.

We therefore disagree with the municipalities' contention that, since their representative public-nuisance claim entitles them only to the equitable remedy of abatement, it is not dischargeable in bankruptcy.

The municipalities contend finally that they have asserted claims concerning Peabody's post-bankruptcy activities and that those claims should be allowed to proceed. But we agree with the bankruptcy court that all the claims in the complaint are directed at Peabody's pre-bankruptcy conduct, as the only allegation against Peabody involving its post-bankruptcy conduct was that it continues to export coal from California. That allegation is insufficient to raise a claim, and so we decline to

hold that it somehow changes the character of the complaints as the municipalities maintain.

As a result, we affirm the judgment of the district court, and though it probably goes without saying, we necessarily also deny the municipalities' request for a stay of the bankruptcy court's decision pending appeal.

_____