# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 20-6018

_____

In re: Jerry Marsh, as surety for Syglo, LLC

*Debtor*

------------------------------

Madison Resource Funding Corp.

*Plaintiff - Appellee*

v.

Jerry Marsh

*Defendant - Appellant*

_____

No. 20-6019

_____

In re: Robert Marsh, also known as Bobby Marsh

*Debtor*

------------------------------

Madison Resource Funding Corp.

*Plaintiff - Appellee*

v.

Robert Marsh

*Defendant - Appellant*
_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis
_____

Submitted: June 22, 2021
Filed: July 21, 2021
_____

Before NAIL, Chief Judge, SCHERMER and SALADINO, Bankruptcy Judges.
_____

SCHERMER, Bankruptcy Judge

Jerry Marsh and Robert Marsh (Debtors) appeal the bankruptcy court's[1] decisions that debt owed by each of them to Madison Resource Funding Corp. (Madison) related to U.S. Bank in the amount of $1,676,162.20, plus interest, costs and any attorney's fees awarded in the matter[2] are nondischargeable pursuant to Bankruptcy Code §523(a)(2)(A).[3] We have jurisdiction over this appeal from the final judgments of the bankruptcy court. *See* 28 U.S.C. §158(b).

## ISSUE

This appeal concerns the Debtors' arguments that the bankruptcy court improperly determined the amount of damages under Bankruptcy Code

_____

[1] The Honorable William J. Fisher, United States Bankruptcy Judge for the District of Minnesota.

[2] Since the Debtors do not dispute the nondischargeability of interest, costs and any attorney's fees awarded in the matter, for the balance of this decision we refer to the court's damages determination generally as $1,676,162.20.

[3] The Debtors waived any argument about the bankruptcy court's decision addressing the dischargeability of debt to Madison concerning Cargill/Arden Mills.

§523(a)(2)(A). Because we see no error in the bankruptcy court's ruling on the amount of damages, we affirm.

## BACKGROUND

We summarize the facts that are more extensively set forth by the bankruptcy court.

Synico Staffing, LLC (Synico), a company formed in 2006, operated to fulfill the temporary staffing needs of other companies. Brothers, Robert and Jerry, were Synico's president and vice president, respectively. Through an entity that contracted with U.S. Bank to facilitate its temporary staffing practices, Synico provided temporary staff to U.S. Bank.

Then in 2013, Jerry formed Syglo, LLC (Syglo), a temporary staffing agency. In June 2014, without the approval and knowledge of U.S. Bank, Synico and Syglo entered into an agreement for Syglo to provide temporary staff to U.S. Bank as a subvendor of Synico.

Madison provides payroll and billing services to temporary staffing agencies, including Syglo, and it buys existing and future accounts. In 2014, Madison and Syglo entered into a Master Agreement and a Security Agreement. Jerry signed a guaranty of Syglo's obligations to Madison.

When Jerry submitted U.S. Bank to Madison for approval as a new client, he did not indicate that Syglo would be a subvendor for Synico. Unbeknownst to Madison until a year after it started funding and processing payments for Syglo's employees at U.S. Bank, Syglo (instead of U.S. Bank) made direct payments to Madison in violation of the agreement. Because of a contract dispute between U.S. Bank and Synico, Syglo was unable to pay Madison.[4]

---

[4] The dispute was actually with the entity that contracted with U.S. Bank, which we shorthand as U.S. Bank for the sake of simplicity.

The bankruptcy court found, based on a letter from Madison to Syglo and Jerry terminating the Master Agreement (Exhibit 33), that at the time of termination Madison was owed $1,676,162.20. Jerry owed the same sum pursuant to his guaranty.

The Debtors each filed a bankruptcy petition. In separate adversary proceedings brought by Madison against each Debtor, the court held nondischargeable under Bankruptcy Code §523(a)(2)(A) debt owed to Madison.

The bankruptcy court found that Jerry's debt to Madison arose from breach of contract (his guaranty). The debt was excepted from Jerry's discharge due to his fraudulent representations and omissions to Madison. Based on the fraud, Madison advanced funding for Syglo's temporary employees at U.S. Bank and was damaged in the amount of $1,676,162.20.

Madison had an undisputed claim against Robert resulting from his conspiracy with Jerry to defraud Madison.[5] Because Robert was a willing participant in Jerry's fraud, the debt was nondischargeable under imputation of fraud.

## STANDARD OF REVIEW

"We review *de novo* the bankruptcy court's conclusions of law." *Lariat Cos., Inc. v. Wigley (In re Wigley),* 620 B.R. 87, 91 (B.A.P. 8th Cir. 2020) (citing *Pierce v. Collection Assocs., Inc. (In re Pierce),* 779 F.3d 814, 817 (8th Cir. 2015)). "We review for clear error the bankruptcy court's findings of fact." *Id.* (citing *Islamov v. Ungar (In re Ungar),* 633 F.3d 675, 679 (8th Cir. 2011)).

---

[5] Robert did not contest the bankruptcy court's additional finding that his debt was evidenced by his listing on his bankruptcy schedules a $2,000,000.00 undisputed debt to Madison.

4

## DISCUSSION

Bankruptcy Code §523(a)(2)(A) excepts from an individual debtor's discharge:

> (a) . . . *any debt*—
>     (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>         (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. §523(a)(2)(A) (emphasis added). Generally, under §523(a)(2)(A), a creditor:

> must prove by a preponderance of the evidence that a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage.

*Excellent Home Props., Inc. v. Kinard (In re Kinard)*, 998 F.3d 352, 354-55 (8th Cir. 2021) (quoting *Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 602 (8th Cir. 2017) (quotation marks omitted).

The Debtors do not dispute the first four elements. They dispute only the amount of damages.

The bankruptcy court correctly analyzed first, under nonbankruptcy law the existence of a debt to Madison and second, under federal bankruptcy law the issue of dischargeability. *See Reuter v. Cutcliff (In re Reuter)*, 686 F.3d 511, 516 (8th Cir. 2012) (there was a need to establish liability under nonbankruptcy law before holding claims nondischargeable under bankruptcy law); *Lund-Ross Constructors, Inc. v. Buchanan (In re Buchanan),* 626 B.R. 520, 528 (B.A.P. 8th Cir. 2021) (court did not reach issue of nondischargeability where creditor did not first demonstrate

5

to the bankruptcy court how it could establish a personal debt under nonbankruptcy law); *see also Grogan v. Garner,* 498 U.S. 279, 283-84 (1991) (validity of a claim is determined by rules of nonbankruptcy law but dischargeability is determined by federal bankruptcy law).

The bankruptcy court did not err when it stated that Madison proved it was owed a debt from Jerry in the amount of $1,676,162.20 for breach of contract (his guaranty) and that Robert was vicariously liable for the debt due to the Debtors' conspiracy. It also appropriately excepted the full debt from discharge as damages fraudulently obtained.

The Debtors dispute the amount of damages awarded by the bankruptcy court. They believe the amount includes profit, which they argue Madison is not entitled to under Minnesota law for damages based on fraud. The Debtors conflate the requirements for establishing a debt under nonbankruptcy law and for determining nondischargeability under bankruptcy law. Section 523(a) refers to "*any debt*." 11 U.S.C. §523(a) (emphasis added). In turn, §101(12) defines "debt" as "liability on a claim." 11 U.S.C. §101(12). Section 101(5) defines "claim" generally as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. §101(5)(A) and (B); *see County of San Mateo v. Peabody Energy Corp. (In re Peabody Energy Corp.),* 958 F.3d 717,724 (8th Cir. 2020) (quoting *In re Flight Transp. Corp. Sec. Litig.,* 874 F.2d 576, 583 (8th Cir. 1989)) ("Our court has said that Congress intended 'claim' to include 'virtually all obligations to pay money.' "). Minnesota law on damages for fraud is irrelevant here because the Debtors' state law debts are for breach of contract and vicarious liability due to conspiracy. The Debtors made no convincing argument why the bankruptcy court erred when it held that Madison established the requirements of §523(a)(2)(A) with respect to the full debt.

Madison served each Debtor with requests for admissions (RFAs). After the Debtors failed to respond to the RFAs, the bankruptcy court deemed most of the

RFAs admitted. The evidence and admitted RFAs support the bankruptcy court's determinations of the amount of damages.

The Debtors maintain that the bankruptcy court based its finding of the amount of damages on mere allegations and the testimony of Richard Chipman, Madison's Vice President and Chief Financial Officer. They believe Mr. Chipman's testimony consisted only of allegations and that there was no documentary evidence or calculations to support the court's finding. The Debtors offered no evidence to the contrary. We disagree with the Debtors. In addition to Mr. Chipman's testimony, the bankruptcy court based its damages determination on evidence admitted at trial, including Exhibit 33. We see no error by the bankruptcy court. And, we will not second guess the court's determination of the credibility of a witness. See FED. R. CIV. P. 52(a)(6) (made applicable by FED. R. BANKR. P. 7052) ("the reviewing court must give due regard to the trial court's opportunity to judge the witness' credibility").

The bankruptcy court stated that the RFAs deemed admitted in each Debtor's case, which were adjudged by the court as facts, established the amount of damages under §523(a)(2)(A). These RFAs provide support for the decisions against the Debtors. As the bankruptcy court appropriately found with respect to damages, Jerry admitted that Madison sustained damages in the amount of $1,676,162.00[6] as a direct result of Jerry's misrepresentation to and concealment of material facts from Madison, done in furtherance of the Debtors' conspiracy. Citing to the RFAs, the bankruptcy court also correctly found that Robert admitted he owed a debt of $1,676,162.00 for funds advanced to U.S. Bank.

The Debtors believe the bankruptcy court's failure to deem admitted RFA 61 in each Debtor's case, which stated that the debt was nondischargeable under §523(a)(2)(A), meant the amount of damages was not admitted by the RFAs. Again,

---

[6] The twenty cent difference between the amount of damages admitted in the RFAs and the amount decided by the bankruptcy court is of no consequence.

we disagree.  The bankruptcy court did not err in deciding that the amount of damages was established by other RFAs that were deemed admitted.

## CONCLUSION

For the reasons stated, the decisions of the bankruptcy court are AFFIRMED.

_____